In re THOMSON McKINNON SECURI-TIES INC. and Thomson McKinnon Inc., Debtors.

THOMSON McKINNON SECURITIES INC., Plaintiff,

v.

John O. LEASURE, Defendant.

Bankruptcy Nos. 90 B 10914, 90 B 11805 and 90 ADV. 6083A.

United States Bankruptcy Court, S.D. New York.

Sept. 27, 1991.

---

**10**

DeBevoise & Plimpton, New York City, for debtors.

Pollack & Kaminsky and Kevin A. Brousell, New York City, for defendant.

## DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The defendant, John O. Leasure ("Leasure"), has moved pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56 for an order granting summary judgment on the ground that in accordance with a release executed by the Chapter 11 debtor, Thomson McKinnon Securities Inc. ("TMSI"), any and all claims which TMSI may have against Leasure have been released and discharged. The debtor, TMSI, opposes the defendant's motion and maintains that the release in question did not discharge the defendant's personal loan obligation to TMSI.

### FACTUAL BACKGROUND

TMSI filed with this court on March 28, 1990, a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continued in control of its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

The defendant, Leasure, is a former vice president and director of TMSI. On or about October 16, 1987 and December 17, 1987, TMSI lent Leasure the sum of $210,-500.00 to assist him in the purchase of a cooperative apartment in New York City. In April of 1989, Leasure repaid $50,000.00 to TMSI, leaving an unpaid principal balance of $160,500.00. Thereafter, Leasure left his position with TMSI for a new position with an affiliated partnership known as Thomson McKinnon Asset Management L.P. (the "Partnership"), engaged in the business of investment management. Leasure became an officer and director of the Partnership.

On May 14, 1991, TMSI commenced the present adversary proceeding to collect the unpaid balance of a loan to Leasure who asserted in his answer that he was released from this obligation pursuant to a written release ("the Release") executed on October 31, 1990.

In the summer of 1990, TMSI negotiated and entered into a Purchase and Option Agreement with an organization known as Thomson Advisory Group, Inc. ("TAG"). Pursuant to the Purchase and Option Agreement, TAG purchased the investment management business formerly operated by TMSI's Partnership, in which Leasure was then employed as an officer and director.

In connection with TMSI's sale of the Partnership to TAG, TMSI executed the Release, whereby TMSI expressly released and discharged any and all claims which TMSI had against the Partnership, various mutual funds managed by the Partnership, three named individuals who were expected to be key employees of the new enterprise acquired by TAG "and all affiliates, successors, assigns, *directors, officers, employees* and agents of the Released Parties and their respective subsidiaries and affiliates...." *Release* (emphasis added).

Defendant Leasure contends that the Release extinguished TMSI's claim against him for the repayment of the loan made to him when he was an officer and employee of TMSI, and before he became an officer and employee of the Partnership which TMSI sold to TAG. There is no question that Leasure was not specifically named in the Release as a released party. Moreover, Leasure does not claim that his loan obligation to TMSI, which was incurred to purchase a cooperative apartment in New York City when he was employed by TMSI, had any relationship to his subsequent capacity as an employee and officer of the Partnership. Leasure maintains that the language in the Release is unambiguous and that the general reference in the Release to "officers" and "employees" of the Partnership had the effect of extending the Release not only to claims that TMSI might have had against such parties in their capacities as officers and employees of the Partnership, but also to the unrelated individual loan claim that TMSI had against Leasure.

TMSI argues that the purpose for the Release of its claims against the Partnership, including the Release of claims against officers and employees of the Partnership, was to protect the purchaser, TAG, from liabilities of the kind it would otherwise acquire upon becoming the new general partner of the Partnership. TMSI reasons that it would have made no sense to release the Partnership from claims after the sale of the Partnership to TAG while continuing to hold the officers and employees, through whom the Partnership acted, liable on the same claims. It was not intended that TMSI should be allowed after the sale of the Partnership to TAG to make the same claims against the officers and employees of the Partnership that the Release was intended to bar against the Partnership acquired by TAG.

## DISCUSSION

Summary judgment is authorized only when there is no genuine issue as to any material fact and when the moving party is entitled to a judgment as a matter of law. Bankr.R. 7056 (incorporating Fed.R.Civ.P.

56(c)). The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this context, TMSI asserts that there are disputed issues of material facts because there is an ambiguity in how to interpret and apply the Release.

■ On its face, the Release reflects the fact that where TMSI intended to release specific employees of the Partnership for their individual liabilities to TMSI, those three key individuals were specifically named in the Release. If the Release purported to discharge any and all claims TMSI may have had against all officers and employees of the Partnership for claims unrelated to their conduct as officers and employees of the Partnership, there would have been no need to name the three key employees whose individual obligations to TMSI were discharged under the Release. Specifically naming the three key employees in the Release would have been superfluous if it was clear that the Release extended to all individual claims of TMSI against officers and employees of the Partnership, however unrelated the claims might have been to their capacities as officers and employees of the Partnership.

Leasure attempts to bring his individual loan obligation within the scope of the Release, notwithstanding that the obligation inured to TMSI before Leasure became an officer and employee of the Partnership. Leasure furnished no consideration for the Release and offers no plausible explanation why TMSI would intend to discharge Leasure's individual loan obligation under a release given to protect TAG from the liabilities of the Partnership and its officers and employees to TMSI following TAG's acquisition of the Partnership. TAG had

no interest in causing Leasure to be released from any unrelated personal obligations he might have owed to TMSI merely because Leasure was an officer and an employee of the Partnership.

Leasure's attempt to inject an unrelated prepartnership personal obligation to TMSI within the coverage of the Release which TMSI executed in connection with TAG's purchase of the Partnership is not supported by the express language in the Release. In viewing the Release in a light most favorable to TMSI, the party opposing the motion, as must be done for the purpose of summary judgment, the most that can be said is that the Release is ambiguous. Leasure will have to produce additional facts to prove that TMSI and TAG intended to include Leasure's loan obligation to TMSI within the scope of the Release.

The purpose of the Release was to protect TAG after it acquired the Partnership from claims which TMSI might have had against the Partnership and its officers and employees who acted for the Partnership. There is nothing in the express language of the Release to reflect that TMSI's unrelated personal claim against a former employee, who later became an employee of the Partnership, was also discharged for TAG's protection. In reading the Release in the context of TAG's purchase of the partnership from TMSI, it seems incredulous that TAG would have any interest in TMSI's loan claim against its former employee.

In a strikingly similar case, *Adams v. Judson,* 243 A.D. 404, 277 N.Y.S. 304 (1st Dep't 1935), a plaintiff sued a defendant for failing to remit all the proceeds from the sale of certain stock belonging to the plaintiff. The defendant was president of a corporation that had employed the plaintiff under a written contract to serve as vice president of the corporation. The corporation later cancelled the plaintiff's employment contract pursuant to an agreement wherein the plaintiff released the corporation, its subsidiaries, officers, and directors from any and all claims of whatever kind and nature arising under the plaintiff's contract of employment. As an affirmative defense to the plaintiff's suit for the unremitted proceeds from the sale of the plaintiff's stock, the defendant asserted the release which plaintiff issued to the defendant's corporation and which released the corporation and its officers and directors. As an officer and director, the defendant contended that the plaintiff's claim for the unremitted proceeds from the stock sale was discharged under the release which the plaintiff issued to the defendant's corporation. The plaintiff argued that the defendant was not released from any liability except that which was incurred in connection with the business of the corporation as one of its officers and directors.

Summary judgment in favor of the defendant was reversed by the New York Supreme Court, Appellate Division, on the theory that the language of the release was not sufficiently clear to reflect that the defendant was released from individual liability as distinguished from liability incurred as an officer or director of the corporation. *Id.* The court concluded that parole evidence was necessary to explain the effect of the release.

Similarly, in the instant case, it cannot be concluded that the defendant, Leasure, was released from his individual loan liability to TMSI, as distinguished from his liability as an officer or employee of the partnership. This ambiguity is especially significant because TMSI gave the Release in question to protect TAG against claims which TMSI might have against the Partnership acquired by TAG. Manifestly, TAG needed no additional protection from any unrelated individual claims which TMSI might have had against former employees who later became employees of the Partnership.

The Release in question is not clear on its face as to whether or not the words "all claims" and "directors, employees and agents of the released parties" include claims against any employee of the Partnership that arose before the employee was hired by the Partnership and which relate to a personal loan by TMSI to the employee having nothing at all to do with the employ-

ee's services for the Partnership by TAG. In construing the scope and meaning of a release, consideration must be given to the intent of the parties which is a question of fact. *Ruskay v. Waddell*, 552 F.2d 392, 395 (2d Cir.), *cert. denied*, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977).

> The scope and meaning of a release will be determined by the manifested intent of the parties—in Corbin's words, "by the process of interpretation, just as in the case of determining the meaning of an executory contract."

*Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir.1965) (quoting 5A Corbin on Contracts § 1238 at 560 (1964)).

■ As the Second Circuit observed in *Bank of America National Trust and Savings Association v. Gillaizeau*, 766 F.2d 709 (2d Cir.1985).

> New York law requires that a release contain an "explicit, unequivocal statement of a present promise to release defendant from liability." [*quoting Carpenter v. Machold*, 86 A.D.2d 727, 447 N.Y.S.2d 46 (3d Dep't 1982)]. Any words may be used, as long as they manifest the releasor's intent to discharge. *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir.1965) (applying New York law); *Pratt Plumbing & Heating, Inc. v. Mastropole*, 68 A.D.2d 973, 414 N.Y.S.2d 783, 784–85 (3d Dep't 1979). The parties' intent will determine the scope of the release. *Gordon*, 358 F.2d at 263.

*Id.* at 713. In determining the parties' intent as to whether an instrument is a release under New York law, extrinsic evidence and oral testimony may be considered because the resolution of this issue is a factual question which may not be decided on a motion for summary judgment. *See Marvel Entertainment Group v. Young Astronaut Council*, 747 F.Supp. 945, 948 (S.D.N.Y.1990).

In the instant case, as in *Tag Group S.A. v. Haas and Haynie Corp.*, 637 F.Supp. 121, 124 (S.D.N.Y.1986), the word "claim" is ambiguous as is the phrase "directors, officers, employees and agents." Therefore, extrinsic evidence will be required to explain the ambiguity. Accordingly, sum-

mary judgment may not be granted in favor of the defendant, Leasure.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. There are genuine issues of material facts with respect to the scope of the Release in question and whether or not the parties to the Release intended to release TMSI's unrelated loan claim against Leasure. The language in the Release does not unambiguously support the defendant's position.

3. Because there are genuine issues of material facts in dispute, summary judgment is unavailable under Federal Rule of Civil Procedure 56 and Bankruptcy Rule 7056.

4. The defendant's motion for summary judgment is denied.

SETTLE ORDER on notice.