204 P.3d 1101

**LANGERMAN LAW OFFICES, P.A., and Law Office of Richard Langerman, Plaintiffs/Appellants,**

v.

**GLEN EAGLES AT the PRINCESS RESORT, LLC, and Kari Kilian, Defendants/Appellees.**

No. 1 CA–CV 08–0104.

Court of Appeals of Arizona, Division 1, Department C.

March 3, 2009.

Law Office of Richard Langerman By Richard W. Langerman, Phoenix, Attorneys for Plaintiffs/Appellants.

Snell & Wilmer, L.L.P. By Patrick J. Paul, Marc A. Erpenbeck, Martha E. Gibbs, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

HALL, Judge.

¶1 This case involves a plaintiff's attorney's attempt to collect attorneys' fees allegedly owed him by the plaintiff from the defendant even though the defendant was awarded more in sanctions under Arizona Rule of Civil Procedure 68(g)[1] than the plaintiff was awarded by the jury. The superior court dismissed the complaint, and we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Langerman Law Offices, P.A., and the Law Office of Richard Langerman (collectively "Langerman") represented Kari Kilian in a lawsuit against Glen Eagles at the Princess Resort, L.L.C. In that suit, the jury awarded Kilian $100,000.00, and the court awarded Kilian $21,756.91 in costs. Because Kilian had rejected an offer of settlement that exceeded the jury's award, the court also granted Glen Eagles's request for sanctions pursuant to Rule 68(g) in the amount of $151,891.69. Glen Eagles proposed a form of judgment that offset the awards and entered a judgment in its favor of $30,134.78. Kilian objected to this form of judgment because it "fail[ed] to account for [prejudgment] interest earned on the jury's verdict from the date of the verdict to the date of the court's order awarding taxable costs and sanctions to the parties." Kilian's objection specified that the amount of that interest was $1,506.85. Instead of proposing a form of judgment that subtracted the $1,506.85 from the $30,134.78 owed to Glen Eagles, however, Kilian proposed a judgment that "enter[ed] judgment" for Kilian for $100,000.00 with interest accruing from April 23, 2004 until paid in full; "enter[ed] judgment" for Kilian for $21,756.91 with interest accruing from June 17, 2004 until paid in full; and "enter[ed] judgment" for Glen Eagles in the amount of $151,891.69 with interest accruing from June 17, 2004 until paid in full. The superior court signed a final judgment in the form proposed by Kilian.

¶3 On July 19, 2005, Kilian filed for bankruptcy. Glen Eagles initiated an adversary proceeding against Kilian in the bankruptcy court in an effort to have the awards for Kilian set off against the award for Glen Eagles. Kilian and Glen Eagles reached a settlement that would offset the awards and leave Glen Eagles with an unsecured claim in the bankruptcy proceeding for $30,134.78 plus accrued interest. On December 12, 2006, Kilian and Glen Eagles filed a motion asking the bankruptcy court to approve the settlement. On November 6, 2006, however, Langerman had filed a complaint in superior court requesting a judgment in its favor and against Glen Eagles for the amount purportedly awarded to Kilian in the previous lawsuit. Langerman no longer represented Kilian and asserted it had an attorney's charging lien on the awards in favor of Kilian that exceeded the amount of those awards. The bankruptcy court refused to approve the settlement between Kilian and Glen Eagles while Langerman's complaint was still pending in the superior court.

¶4 In an order filed December 20, 2007, the superior court dismissed Langerman's complaint. Langerman timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

### Appeal is not moot

¶5 After Langerman filed its notice of appeal in this matter, the bankruptcy court approved the settlement agreement between Glen Eagles and Kilian. Glen Eagles argues this renders the appeal moot because Langerman can only possibly have a claim on the debt Glen Eagles owes to Kilian if Glen Eagles owes a debt to Kilian, and now it does not. Ordinarily, this might indeed render the appeal moot. *See Bd. of Supervisors v.*

---

1. Rule 68(g) provides, in relevant part:

    If [a party] rejects an offer [made pursuant to this Rule] and does not later obtain a more favorable judgment other than pursuant to this Rule, the offeree must pay, as a sanction, reasonable expert witness fees and double the taxable costs, as defined in A.R.S. § 12–332, incurred by the offeror after making the offer and prejudgment interest on unliquidated claims to accrue from the date of the offer.

*Robinson,* 105 Ariz. 280, 281, 463 P.2d 536, 537 (1970) (explaining that courts do not decide cases when the resolution of the case cannot affect the plaintiff). Here, however, the bankruptcy court approved the settlement only after Langerman's complaint was dismissed. Because Glen Eagles has not shown that Langerman could not obtain relief reinstating the debt in the bankruptcy court if we were to reverse the superior court's dismissal order, we conclude that Glen Eagles has failed to sufficiently demonstrate that the issue is moot.

### Langerman has no charging lien

¶ 6 To establish that it has a common-law charging lien on the judgment, Langerman must demonstrate, at a minimum, that it is owed attorneys' fees under its contingency fee contract with Kilian and that there is some judgment in Kilian's favor to which a charging lien can attach, *see* 7A C.J.S. *Attorney & Client* § 468 (2008) ("[T]he judgment recovered by an attorney's efforts is primarily the subject matter of a charging lien.... In order that a valid charging lien may exist, it is essential that there exist some subject matter to which such lien may attach."). Whether Kilian owes Langerman attorneys' fees is a matter of contract, *see id.* at § 443 ("An attorney's right to compensation remains based on contract, and attorney liens provide security for these contractual rights."), and is not before us. We do, however, conclude that, in any event, Langerman has no charging lien because there is no judgment in favor of Kilian to which it could attach.

¶ 7 Langerman argues that there were three separate judgments in this case, and that it has an attorney's lien against the two in favor of Kilian. Glen Eagles argues that there was only one final judgment, containing three awards, and that judgment was in its favor. If Glen Eagles is correct, then Langerman can have no charging lien.

¶ 8 As defined in our rules of civil procedure, a " '[j]udgment' ... includes a decree and an order from which an appeal lies." Ariz. R. Civ. P. 54(a). In this sense, there was a single judgment filed on August 23, 2004, which contained three awards. The

text of the document itself, which is text proposed by Langerman, reads "it is directed that *this judgment* be entered pursuant to Rule 54(b) of the Arizona Rules of Civil Procedure." (Emphasis added.) Although the document purports to "enter[ ] judgment" for three separate amounts, we conclude that in the sense relevant to establishing a common-law charging lien, the document is but one judgment in favor of Glen Eagles for the net amount. Therefore, there being no judgment in favor of Kilian to which Langerman could attach a charging lien, Langerman has no charging lien.

¶ 9 "A charging lien is an attorney's lien that attaches after a judgment is obtained in the litigation." *Skarecky & Horenstein, P.A. v. 3605 N. 36th St. Co.,* 170 Ariz. 424, 428, 825 P.2d 949, 953 (App.1991). Part of the reason for permitting charging liens is to ensure that a dishonest client does not walk away with an award secured for the client through the attorney's efforts without paying the attorney for those efforts. *See In re Warner's Estate,* 160 Fla. 460, 35 So.2d 296, 298–99 (1948) ("[A] litigant should not be permitted to walk away with his judgment and refuse to pay his attorney for securing it."); *Dorsey & Whitney, LLP v. Grossman,* 749 N.W.2d 409, 420 (Minn.Ct.App.2008) ("An attorney lien is an equitable lien created to prevent a client from benefiting from an attorney's services without paying for those services."); *Computer One, Inc. v. Grisham & Lawless, P.A.,* 144 N.M. 424, 188 P.3d 1175, 1179–80 (2008) ("The charging lien arises from a recognition that when an attorney assists a client in procuring a judgment or 'fund recovered by his efforts,' the attorney needs to be paid from that fund for the value of services rendered before the proceeds are disbursed. A court, sitting in equity, has a responsibility to enforce the lien against the judgment to protect lawyers from dishonest clients."). "The principle ... was settled long ago ... that the party should not run away with the fruits of the cause without satisfying the legal demands of his attorney, by whose industry, and in many instances, at whose expense, those fruits are obtained." *State v. Nat'l Sur. Co.,* 29 Idaho 670, 161 P.

1026, 1035 (1916) (quoting *Read v. Dupper,* 101 Eng. Rep. 595, 596 (1795)).

¶ 10 Here, the fruit of Langerman's efforts was a jury verdict for less than was offered in settlement. Indeed, after factoring in the Rule 68(g) sanctions, Kilian ended up the net loser. When the client is the net loser, there is no award with which the client could abscond and no judgment to which a charging lien could attach. *See Skarecky,* 170 Ariz. at 428, 825 P.2d at 953 ("Only an attorney successful in the litigation will have a fund from which to recover fees."); *see also Nat'l Sales & Serv. Co. v. Superior Court,* 136 Ariz. 544, 545, 667 P.2d 738, 739 (1983) (explaining that charging liens "attach to the funds or other property created or obtained by the attorney's efforts.... [S]uch a lien arises only when it appears that the parties looked to the fund itself for the payment of the attorney's fee."); *Richfield Oil Corp. v. La Prade,* 56 Ariz. 100, 105, 105 P.2d 1115, 1118 (1940) ("[I]f the proceeds of a settlement pass through the hands of plaintiff's attorneys, they have an attorney's lien thereon for the amount of their fee...."); *Correa v. Christensen,* 780 So.2d 220, 220 (Fla.Dist.Ct.App. 2001) ("It is not enough to support the imposition of a charging lien that an attorney had provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services.").

¶ 11 That the superior court did not offset the awards in the final judgment does not change the fact that Kilian suffered a net loss. As noted by Glen Eagles, the superior court did not rule that the awards could not be set off and, in fact, Langerman's objection to Glen Eagles's proposed form of judgment implicitly acknowledges that they should be:

Plaintiff does not dispute that it is appropriate for defendant to have offset the amounts of costs awarded versus the sanctions imposed because these amounts were liquidated at the same time. In contrast, plaintiff believes that it was improper for defendant to offset the amount of Rule 68 sanctions imposed versus the amount of the jury's verdict because defendant's proposal fails to account for the interest earned on the verdict from the date of the verdict to the date of the sanctions awarded.

(Emphasis deleted.)

¶ 12 The happenstance that the superior court accepted a form of judgment that did not do the offsetting math does not alter the reality that this was a single judgment that, when netted, favored Glen Eagles. *See, e.g., Wagner v. Zanghi,* 984 So.2d 1288, 1288 (Fla. Dist.Ct.App.2008) (noting that final judgment containing three separate awards is nonetheless "a single judgment"); *see also Minority Earth Movers, Inc. v. Walter Toebe Constr. Co.,* 251 Mich.App. 87, 649 N.W.2d 397, 401–03 (2002) (explaining that whether one judgment can be used to offset another is a different issue from whether there should have been a single judgment in a particular case and noting that the court was "disturbed" by plaintiff's attorney's belief that he was entitled to collect his contingency fee on a $135,000 award in favor of his client when defendant got an award of $100,000 on an "inextricably related" counterclaim); *Stand Energy Corp. v. Cinergy Servs., Inc.,* 144 Ohio App.3d 410, 760 N.E.2d 453, 460–61 (2001) (vacating a form of judgment that provided that plaintiff "is entitled to recover from" the defendant a certain sum and defendant "is entitled to recover from" plaintiff a certain sum because "the trial court erroneously failed in its judgment to provide one net award of damages"); *Brown v. David K Richards & Co.,* 978 P.2d 470, 479, ¶¶ 47–49 (Utah Ct.App.1999) (holding that when a final judgment contains various awards for each party with "a variety of interest rates and starting dates," the court "should separately calculate awards to each party, interest on the awards, and attorney fees and costs due each party. Thereafter, the court should enter one net judgment in favor of the party receiving the largest total award....").

¶ 13 In *John W. Muije, Ltd. v. A North Las Vegas Cab Co.,* 106 Nev. 664, 799 P.2d 559 (1990), the court was faced with facts similar to those presented here. There, a woman injured when her car was hit by a cab driver sued the cab company and was offered settlements of $200,000.00 and then $250,000.00. *Id.* at 559. Her attorney, Mui-

je, advised her both times to accept the offer and also informed her of the sanctions that could be imposed under Nevada law if she was awarded less by the jury than she was offered in settlement. *Id.* Before the jury's verdict, Muije filed an attorney's lien pursuant to Nevada statute. *Id.* at 560. The jury awarded the woman $12,311.75 in damages, and the court awarded the cab company $86,098.06 in fees and costs. *Id.* The court determined that even though Muije had perfected his lien pursuant to Nevada law, the case did not end in a judgment against which he could attach his lien. *Id.* at 560–61. The court explained that Muije's "argument that Cab Company is not a lienholder nor a secured creditor ignores Cab Company's status as a party to the case. The purpose of the suit was to determine what Cab Company owed, and the net result of the suit was that Cab Company owed nothing." *Id.* at 560. The court summed up its policy analysis this way:

> The purpose of NRS 17.115 [Nevada's statute regarding the offer of judgment] is to promote settlement of suits by rewarding defendants who make reasonable offers and penalizing plaintiffs who refuse to accept them. Early settlement saves time and money for the court system, the parties, and the taxpayers. NRS 18.015 [Nevada's statute governing attorney charging liens] also accomplishes an important function of securing attorney's fees and thereby encouraging attorneys to take cases of those who could not otherwise afford to litigate. However, the imposition of attorney's fees pursuant to NRS 18.015 should not reduce the advantage the defendant gains by making a reasonable offer to settle. NRS 17.115 requires a plaintiff's attorney to advise his or her client to accept reasonable offers. The possibility that a client will not heed sound advice is a risk that the attorney, not the opposing party, must bear.

*Id.* at 561. *See also Hobson Constr. Co., Inc. v. Max Drill, Inc.,* 158 N.J.Super. 263, 385 A.2d 1256, 1258 (Ct.App.Div.1978) ("[A]n attorney's lien has no viability where the client's claim is extinguished because of the defense or counterclaim of an opposing litigant. Regardless of the attorney's right of recovery against his own client for services which were rendered, his statutory lien is one impressed upon the client's interest in the claim or judgment and can rise no higher than that interest.").

¶ 14 Similarly, in *Bennett v. Weitz,* 220 Mich.App. 295, 559 N.W.2d 354, 355 (1996), the Michigan Court of Appeals determined that the plaintiffs' attorneys could not collect their fees from the defendants based on their common-law attorneys' lien because the defendants were awarded more in statutory mediation sanctions than the jury awarded the plaintiffs in damages. After deciding the applicable Michigan court rules supported the defendants' position, the court concluded its analysis as follows:

> Additionally, we decline to impose a duty upon defendants to pay the contingency fee of plaintiffs' counsel as a matter of policy. Under the traditional "American rule," each side must bear its own litigation expenses, unless the law or court rules specify an exception. This rule was designed to ensure that private parties who pursue individual remedies bear the expense of litigation under most circumstances. By rejecting the mediation award, plaintiffs and their counsel assumed the risk that the verdict would be lower than the award. Defendants should not be made to pay plaintiffs' attorney fees merely because plaintiffs lost their gamble. No special equitable circumstances exist to support the collection of plaintiffs' contingent attorney fees from defendants.

*Id.* at 357 (citations omitted). *See also Wildung v. Sec. Mortgage Co.,* 143 Minn. 251, 173 N.W. 429, 430 (1919) ("[T]he lien of an attorney extends only to the clear balance due his client upon the settlement of the cross-demands of the parties...."); *Galbreath v. Armstrong,* 121 Mont. 387, 193 P.2d 630, 634 (1948) ("The general rule is that ... an attorney's lien is subordinate to the rights of the adverse party to offset judgments in the same actions or in actions based on the same transaction...."). The same reasoning has been relied upon for over a century:

> For the protection of the lawyer through whose exertions his client's interests have been preserved and his rights secured, a

lien equitable in its nature is allowed upon the interest of such client in the judgment obtained; but, when each litigant has obtained a judgment in the same action, there are equities which may be adjusted between the parties without reference to the lien of the attorney for either.

*Lindsay v. Pettigrew*, 8 S.D. 244, 66 N.W. 321, 321 (1896). In *Lindsay*, as here, the plaintiff was insolvent, and the South Dakota Supreme Court reversed a superior court order refusing to set off the judgments noting that "by the order appealed from, the defendant, although a prevailing party, [was], in effect, required to pay plaintiff's attorney." *Id.; see also Angel Home Health Care, Inc. v. Mederi of Dade County, Inc.*, 696 So.2d 487, 488 (Fla.Dist.Ct.App.1997) (remanding for entry of net judgment where separate judgments could give rise to the "totally absurd" result of insolvent net loser collecting from solvent net winner).

¶ 15 We conclude that when a party is awarded sanctions under Rule 68(g), those sanctions should be applied to offset a verdict in favor of the party who rejected the settlement offer. When, as in this case, the amount of those sanctions is greater than the jury's verdict plus the amount of taxable costs, the plaintiff's attorney has no common-law charging lien on the judgment because there is no net judgment for the plaintiff to which it could attach.

### CONCLUSION

¶ 16 For the foregoing reasons, we affirm the superior court's order dismissing the complaint.

CONCURRING: MAURICE PORTLEY, and MICHAEL J. BROWN, Judges.