**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. AZ-16-1078-JuFL |
| DOUGLAS R. COTTLE and KYLA COTTLE, | Bk. No. 2:09-bk-28307-GBN |
| Debtors. | Adv. No. 2:12-ap-00622-GBN |
| DOUGLAS R. COTTLE; KYLA COTTLE, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[1] |
| ARIZONA CORPORATION COMMISSION, | |
| Appellee. | |

Argued and Submitted on September 23, 2016
at Phoenix, Arizona

Filed - October 17, 2016

Appeal from the United States Bankruptcy Court for the
District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

_____

Appearances:     Appellants Douglas R. Cottle and Kyla Cottle
argued pro se; Matthew A. Silverman argued for
appellee Arizona Corporation Commission.

_____

Before: JURY, FARIS, and LAFFERTY, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Douglas R. Cottle and Kyla Cottle (collectively, Debtors) filed an adversary proceeding against the Arizona Corporation Commission (the ACC) post-discharge, alleging that the ACC had violated the automatic stay by attempting to collect a restitution debt and administrative penalty debt that Debtors agreed to pay in a consent order but which Debtors asserted was discharged.  The ACC answered the complaint, asserting that its collection action was excepted from the automatic stay under § 362(a)(4)[2] and that the debts were nondischargeable under § 523(a)(19).

The bankruptcy court found the restitution debt was discharged and awarded Debtors attorneys' fees and costs.  In further proceedings, the court found the administrative penalty was nondischargeable under § 523(a)(7) and entered an order on April 29, 2015, reflecting that ruling.  Debtors filed a motion for reconsideration, which the bankruptcy court denied by order entered on September 1, 2015.

Thereafter, the parties disputed (1) the appropriate prejudgment interest rate that applied to the administrative penalty and the time period pertinent to the prejudgment interest and (2) whether the ACC was entitled to set off amounts it owed to Debtors under the court's attorney fee award and for the wrongfully garnished funds, both pertaining to the restitution debt.  After further briefing by the parties, the

_____

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

bankruptcy court entered an order on March 10, 2016, ruling that (1) prejudgment interest at the rate of ten percent would be awarded on the administrative penalty amount of $150,000 from April 8, 2010, to May 13, 2015; (2) this amount would be reduced by $7,804.86, the amount the ACC had garnished on the dischargeable restitution claim; (3) the amount would be further reduced by $33,105.79, this amount representing attorney fees, costs, and interest awarded against the ACC in connection with the restitution claim; and (4) the net sum after applying the previous provisions would accrue postjudgment interest at the rate set by 28 U.S.C. § 1961 from May 14, 2015, until fully paid. On the same date, the bankruptcy court entered a final judgment. This appeal followed.

The ACC moved to dismiss this appeal as untimely to the extent Debtors sought review of the April 29, 2015 summary judgment regarding dischargeability of the administrative penalty payment and the September 1, 2015 order denying reconsideration of the April 29 order. A Motions Panel agreed and entered an order limiting the scope of this appeal to the prejudgment interest and setoff issues as reflected in the bankruptcy court's March 10, 2016 order (Scope Order). Debtors appealed the Panel's Scope Order to the Ninth Circuit on August 4, 2016.

For the reasons set forth below, we AFFIRM.

## I. FACTS

In 2009, the ACC began to investigate Debtors for alleged violations of Arizona Revised Statutes (A.R.S.) § 44-1991, which prohibits fraud in the purchase or sale of securities.

-3-

On November 4, 2009, Debtors filed a chapter 7 petition. On April 6, 2010, they received a standard discharge. Two days later, Debtors entered into an Order to Cease and Desist; Order for Restitution; Order for Administrative Penalties and Consent to Same (Consent Order) with the ACC. The State of Arizona (the State) approved the Consent Order on April 27, 2010. The Consent Order was filed in the Maricopa County Superior Court, which entered a judgment concerning the order on May 11, 2010. The order imposed restitution payments of $2,637,880 and an administrative penalty of $150,000 and provided that ten percent interest would accrue on each amount until they were paid in full.

After Debtors failed to begin making payments, the ACC commenced collection actions. On February 22, 2012, Debtors moved to reopen their bankruptcy case, alleging that the ACC had violated the automatic stay and that the debts owed were discharged. The bankruptcy court granted their motion to reopen by order entered on February 23, 2012.

On April 3, 2012, Debtors filed an adversary proceeding against the ACC, alleging violation of the automatic stay, seeking release of the garnished funds, and requesting an order that would prevent the ACC from collecting under the Consent Order.

On cross motions for summary judgment, the bankruptcy court found the restitution payment was discharged and awarded attorneys' fees and costs in the amount of $33,105.79 against the ACC for the time and costs that Debtors incurred for defending the dischargeability of the Consent Order's

-4-

restitution portion under § 523(a)(19). On May 13, 2015, the bankruptcy court entered the order granting judgment in favor of Debtors against the ACC and finding that there was no just reason for delay of entry of the judgment as a final appealable judgment under Civil Rule 54(b), made applicable to the Bankruptcy Code by Rule 7054(a).

Subsequently, the ACC moved for summary judgment, contending that the administrative penalty was nondischargeable under § 523(a)(7). The bankruptcy court ruled on April 1, 2015, that the administrative penalty was nondischargeable. On April 28, 2015, Debtors moved for reconsideration of the court's decision. On April 29, 2015, the bankruptcy court entered an order granting the ACC's summary judgment motion and finding the administrative penalty nondischargeable. The order contained a Civil Rule 54(b) certification. The bankruptcy court also made a notation on the top of the order which said, "[t]his court does not consider this order to be a final order subject to appeal until the court resolves the recently filed motion for reconsideration." On September 1, 2015, the bankruptcy court denied Debtors' motion for reconsideration.

The bankruptcy court later requested that the parties provide further briefing on the prejudgment interest rate that would apply to the administrative penalty. After hearing arguments on prejudgment interest, the court ordered further briefing on prejudgment interest and setoff.

On March 10, 2016, the bankruptcy court entered an order ruling that (1) prejudgment interest at the rate of ten percent would be awarded on the administrative penalty amount of

$150,000 from April 8, 2010, to May 13, 2015; (2) this amount would be reduced by $7,804.86, the amount the ACC had garnished on the dischargeable restitution claim; (3) the amount would be further reduced by $33,105.79, this amount representing attorneys' fees, costs, and interest awarded against the ACC in connection with the restitution claim; and (4) the net sum after applying the previous provisions would accrue postjudgment interest at the rate set by 28 U.S.C. § 1961 from May 14, 2015, until fully paid. On the same date, the bankruptcy court entered a final judgment. This appeal followed.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We consider our jurisdiction in light of Debtors' appeal of the Scope Order. It is well established that "a pending appeal divests a bankruptcy court of jurisdiction to vacate or modify an order which is on appeal." Marino v. Classic Auto Refinishing, Inc. (In re Marino), 234 B.R. 767, 769 (9th Cir. BAP 1999); see also Hill & Sandford, LLP v. Mirzai (In re Mirzai), 236 B.R. 8, 10 (9th Cir. BAP 1999) ("[I]f a district court would be forbidden to act because of an appeal pending before the court of appeals, then both the bankruptcy appellate panel and the bankruptcy court would be similarly constrained."). "The rule divesting lower courts of jurisdiction of aspects of a case involved in an appeal 'is judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.'" Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000).

Accordingly, although we are not bound by a Motions Panel's decision under <u>Couch v. Telescope Inc.</u>, 611 F.3d 629, 632 (9th Cir. 2010), we cannot reconsider the Scope Order while it is on appeal since the same issues would be before two courts at the same time.[3]

However, Debtors' appeal of the Scope Order does not affect our jurisdiction to decide the prejudgment interest and setoff issues presented in this appeal. Those issues are ancillary to the § 523(a)(7) judgment and there is no stay pending appeal of the Scope Order. <u>See</u> <u>In re Padilla</u>, 222 F.3d at 1190. We have jurisdiction to decide the prejudgment interest and setoff issues under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court abuse its discretion in determining that the appropriate prejudgment interest rate was the ten percent the parties had agreed to in the Consent Order?

Did the bankruptcy court abuse its discretion in determining that the prejudgment interest period commenced on April 8, 2010, the date the Consent Order was executed?

Did the bankruptcy court abuse its discretion in permitting the ACC to offset the amount of attorneys' fees, costs, and interest that it owed Debtors against the administrative penalty and the interest on that penalty that Debtors owed the State?

---

[3] Since we are bound by the Scope Order, it is unnecessary for us to rule on the ACC's motion to strike.

## IV. STANDARDS OF REVIEW

Awards of prejudgment interest are reviewed for abuse of discretion. Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 28 (9th Cir. BAP 2009); Gosney v. Law (In re Gosney), 205 B.R. 418, 420 (9th Cir. BAP 1996). We also review under the abuse of discretion standard the bankruptcy court's decision to commence prejudgment interest on a certain date. AMHS Ins. Co. v. Mut. Ins. Co. of Ariz., 258 F.3d 1090, 1103 (9th Cir. 2001). The abuse of discretion standard also applies to the bankruptcy court's decision to allow an offset. Bank of L.A. v. Official PACA Creditors' Comm. (In re Southland + Keystone), 132 B.R. 632, 637 (9th Cir. BAP 1991).

Review of a trial court's determination for an abuse of discretion determination involves a two-pronged test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for application. See United States v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If not, then the bankruptcy court necessarily abused its discretion. Id. at 1262. Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

-8-

## V. DISCUSSION[4]

**A.    The bankruptcy court correctly found that the prejudgment interest rate was ten percent as agreed to by the parties in the Consent Order.**

Section 523 contains no standard or generally applicable interest rate for the allowance of prejudgment interest. However, the award of prejudgment interest in nondischargeability proceedings is authorized under <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 223 (1998), where the United States Supreme Court concluded that the text of § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees and other relief that may exceed the value obtained by the debtor."  This holding equally applies in the context of § 523(a)(7).

It is settled that where a debt that is found to be nondischargeable arose under state law, "the award of prejudgment interest on that debt is also governed by state law."  <u>In re Weinberg</u>, 410 B.R. at 37 (citing <u>Otto v. Niles</u>

---

[4] Neither Debtors nor the ACC provided us with a full transcript of the February 2, 2016 hearing where the bankruptcy court placed its findings of fact and conclusions of law on the record in connection with its decision on prejudgment interest and setoff.  Nonetheless, we exercise our discretion to resolve this appeal on the merits because the court's actual ruling is evident from remarks made in the February 2, 2016, partial transcript provided and from the balance of the record which includes partial transcripts from other hearings.  See <u>Kyle v. Dye (In re Kyle)</u>, 317 B.R. 390, 393 (9th Cir. BAP 2004).  To the extent necessary, we take judicial notice of pleadings filed by both parties in the adversary proceeding.  <u>Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)</u>, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-9-

(In re Niles), 106 F.3d 1456, 1463 (9th Cir. 1997)). The record shows that the Consent Order and the subsequent state court judgment resulted from an action that the ACC brought before an Arizona administrative tribunal based upon alleged violations of Arizona securities laws. The administrative penalty debt, which was found to be nondischargeable, thus arose under Arizona law.[5] Cf. Keeton v. Flanagan (In re Flanagan), 2014 WL 764371 (9th Cir. BAP Feb. 26, 2014) (finding that federal law governed prejudgment interest award where creditor did not obtain state court judgment before seeking a nondischargeability determination and failed to prove any of the claims based on alleged violations of Alaska law), aff'd, 642 F. App'x. 784 (9th Cir. 2016).

Arizona law holds that prejudgment interest on a liquidated claim is a matter of right. L.M. White Contracting Co. v. St. Joseph Structural Steel Co., 488 P.2d 196, 201 (Ariz. Ct. App. 1971); Fleming v. Pima Cnty., 685 P.2d 1301, 1308 (Ariz. 1984). The parties may also specify the prejudgment interest rate by agreement. A.R.S. § 44-1201(A) provides:

---

[5] At an October 21, 2015 hearing on the prejudgment interest issue, the bankruptcy court found that state law controlled the rate for prejudgment interest. The court emphasized that it had consulted the statutory authority for the ACC to issue the Consent Order and it had considered whether or not state law would determine the $150,000 identified in the Consent Order to be a penalty. The court also noted that it had consulted state law to determine that someone must violate a provision of state law or any rule or order of the ACC in order to be the subject of an administrative penalty. We adopt the bankruptcy court's reasoning and conclusion that state law controlled on the issue of prejudgment interest.

> Interest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to. Interest on any judgment that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.

In the Consent Order, Debtors agreed to pay the now nondischargeable administrative penalty debt in the amount of $150,000, and agreed that "[a]ny amount outstanding shall accrue interest at the rate of 10 percent per annum from the date of this Order until paid in full."  This agreement evidences an "obligation" as that term is used in A.R.S. § 44-1201(A).  See Black's Law Dictionary (10th ed. 2014) (an "obligation" includes "[a] formal, binding agreement or acknowledgment of a liability to pay a certain amount or to do a certain thing for a particular person or set of persons; esp., a duty arising by contract."); see also State ex. rel Ariz. Structural Pest Control Comm'n v. Taylor, 224 P.3d 983, 985–86 (Ariz. Ct. App. 2010) (noting "obligation" includes binding agreements enforceable by law).

Since Debtors agreed to the ten percent rate of interest in the Consent Order, the contract establishes that rate.  See Beaulieu Grp. LLC v. Inman, 2011 WL 4971701, at *4 (D. Ariz. Oct. 19, 2011) (where the parties have agreed to a specific interest rate in writing, the Judgment Creditor is entitled to prejudgment interest at that rate).  Accordingly, we discern no abuse of discretion in setting the prejudgment interest at the rate of ten percent.

-11-

**B.    The bankruptcy court correctly found that the prejudgment interest period commenced on April 8, 2010 and ran through May 13, 2015.**

Debtors argue that the bankruptcy court erred in awarding prejudgment interest from April 8, 2010 (the date the Consent Order was issued) until May 13, 2015.  Debtors maintain that the prejudgment interest period ran only for the twenty-eight days between the time that the Consent Order was executed on April 8, 2010, and the time that the ACC obtained the state-court judgment concerning the Consent Order on May 11, 2010.  In support of their argument, Debtors contend that the bankruptcy court found that the state court judgment was the judgment in this case.

At the October 15, 2015 hearing, the bankruptcy court did say that prejudgment interest ran until the state court judgment was entered.  However, the court correctly did not rely on that statement when entering its order.  Here, the term prejudgment interest can have two meanings, depending upon the event that concludes the time period.  It can mean the time period between the date on which the debt was incurred and the date of entry of the initial judgment.  Or it can mean the time period between the date the debt was incurred and the date of entry of the federal judgment of nondischargeability.  Here, it means the latter.[6]

_____

[6] Even if we followed Debtors' argument that prejudgment interest meant only prior to the entry of the state court judgment, the economic result here would be the same.  The applicable Arizona rate of interest post judgment is the same ten percent rate found in the underlying contract.  A.R.S.

(continued...)

-12-

Therefore, as found by the bankruptcy court, prejudgment interest at the rate of ten percent started to accrue on April 8, 2010, the date the Consent Order was issued. The prejudgment interest period ran at the ten percent rate until the time the judgment finding the penalty debt nondischargeable became final. After that, postjudgment interest accrued at the federal rate.

On this record, it is unclear why the bankruptcy court decided that the prejudgment interest period ran through May 13, 2015. That date was the date the court entered the order granting judgment in favor of Debtors on the restitution debt and has nothing to do with the prejudgment period on the penalty debt. The bankruptcy court found the administrative penalty debt nondischargeable by an order entered on April 29, 2015, and fourteen days later on May 13, 2015, the order would have been final but for Debtors' timely filed motion for reconsideration. Actually, the bankruptcy court made a notation on the April 29, 2015 order that it did not consider it final until the court resolved the motion for reconsideration. The bankruptcy court denied Debtors' motion for reconsideration on September 1, 2015. In the end, any error in using May 13, 2015 as the ending date for prejudgment interest enured to Debtors' benefit. Accordingly, we discern no error.

[6](...continued)
§ 44-1201(A). Therefore, the Arizona judgment would have borne interest at the same rate as the consent agreement rate until the bankruptcy court entered its judgment, setting a lower prospective rate to the benefit of Debtors.

-13-

**C.    The bankruptcy court did not abuse its discretion in permitting the ACC to offset amounts it owed to Debtors against amounts Debtors owed to the ACC.**

In the final judgment, the bankruptcy court reduced the nondischargeable administrative penalty of $150,000 plus pre- and postjudgment interest by $33,105.79, the amount of attorneys' fees, costs, and interest that had been awarded against the ACC in connection with the restitution debt dischargeability ruling.[7]  Debtors maintain that the bankruptcy court erred in allowing the ACC to offset the attorneys' fees, costs and interest amounts against the administrative penalty plus interest they owe the State.  According to Debtors, mutuality is lacking because their obligation for payment of the penalty was owed to the State and not to the ACC.  They assert that the State and the ACC are distinctly different entities and charged with different powers from the people of Arizona.

Arizona recognizes the right to offset, or setoff, by permitting parties owing each other money to apply their mutual debts against each other.  Urias v. PCS Health Sys., Inc., 118 P.3d 29, 29-30 (Ariz. Ct. App. 2005) (statutory offset); Langerman Law Offices, P.A. v. Glen Eagles at the Princess Resort, LLC, 204 P.3d 1101, 1106 (Ariz. Ct. App. 2009) (nonstatutory offset).  This avoids "the absurdity of making A pay B when B owes A."  Urias, 118 P.3d at 33 (citing Citizens Bank v. Strumpf, 516 U.S. 16, 18 (1995)).  "To be mutual, the

---

[7] The amount was also reduced by the amount the ACC wrongfully garnished in connection with the restitution award. That setoff does not appear to be at issue in this appeal. However, even if it was at issue the same analysis would apply.

debts must be due to and from the same person in the same capacity." Urias, 118 P.3d at 33.

The same party requirement of mutuality may be satisfied if the ACC and the State are treated as a single entity under the unitary creditor doctrine.[8] Arizona has not addressed whether the unitary creditor doctrine applies to the State or its agencies. Where a state has not addressed a particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it. Vernon v. L.A., 27 F.3d 1385, 1391 (9th Cir. 1994). In doing so, we may look to federal law and the unitary creditor line of cases. Strother v. S. Cal. Permanente Med. Grp., 79 F.3d 859, 865 (9th Cir. 1996) (A federal court must use its best judgment to predict how the highest state court would resolve an issue not yet decided by "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."); see also L.A. Cty. Emps. Ret. Ass'n v. Towers, Perris, Forster, & Crosby, Inc., 2002 WL 32919576, at *10-11 (C.D. Cal. June 20, 2002).

Where general setoff rights are concerned under § 553(a), courts, analogizing the federal government's right to setoff outside of bankruptcy, treat agencies and departments of the federal government, "except those acting in some distinctive

---

[8] Debtors claim in their reply brief that the ACC did not argue the unitary creditor issue in the bankruptcy court and therefore it has been waived. We disagree. The bankruptcy court discussed the unitary creditor doctrine at the February 2, 2016 hearing as reflected in the partial transcript provided by the ACC. Therefore, this issue was directly before the bankruptcy court and considered.

private capacity," as a single "governmental unit." See Cherry Cotton Mills v. United States, 327 U.S. 536 (1946) (recognizing federal government's right to interagency setoff); HAL, Inc. v. United States (In re HAL, Inc.), 196 B.R. 159, 165 (9th Cir. BAP 1996), aff'd, 122 F.3d 851, 853 (9th Cir. 1997).

In In re HAL, Inc., the Ninth Circuit acknowledged that the United States Supreme Court "clearly adopted" the unitary setoff rule for government agencies in the nonbankruptcy context in Cherry Cotton Mills. In Cherry Cotton Mills, the court permitted money owed to a debtor in back taxes by the Department of the Treasury to be used to offset a defaulted loan owed by the debtor to the Reconstruction Finance Corporation (RFC). The Supreme Court upheld the Court of Claims' jurisdiction to hear the government's counterclaim asserting the right of setoff because the RFC was a government agency with the following characteristics: (1) its directors were appointed by the President; (2) its directors were confirmed by the Senate; (3) its activities were all aimed at accomplishing a public purpose; (4) all of its money came from the government; (5) its profits, if any, went to the government; and (6) the government had to bear its losses. 327 U.S. at 539. The Supreme Court emphasized: "That Congress chose to call [RTC] a corporation does not alter its characteristics so as to make it something other than what it actually is, an agency selected by Government to accomplish purely Governmental purposes." Id.

Other courts have found that a state is a single entity for purposes of sovereign immunity and setoff. See Ossen v. State of Conn., Dep't of Soc. Servs., (In re Charter Oak Assocs.),

-16-

203 B.R. 17, 22 (Bankr. D. Conn. 1996) (concluding that all the publicly acting agencies of the state are a single governmental unit for purposes of Eleventh Amendment immunity and setoff under §§ 106(a) and (b)) (following rationale of Doe v. United States., 58 F.3d 494 (9th Cir. 1995)); Wallach v. N.Y. State Dep't of Taxation and Fin. (In re Bison Heating & Equip., Inc.), 177 B.R. 785 (Bankr. W.D.N.Y. 1995) (New York Department of Labor and Department of Taxation and Finance treated as a "single entity" for purposes of offset under waiver of sovereign immunity provision); In re W. Auto Pool & Trans., Inc., 2010 WL 9475475, at *5-7 (Bankr. E.D. Cal. 2010) (applying unitary creditor theory to California State Board of Equalization and state Controller).

Taken together, these authorities support the bankruptcy court's decision to treat the ACC and the State as a unitary creditor for purposes of setoff and the mutuality requirement. The ACC is not acting in a private capacity, but is a governmental entity performing governmental functions, which are all aimed at accomplishing a public purpose. As demonstrated by the ACC, all its money comes from the Arizona Legislature, and its "profits," if any, are public funds that are subject to the Legislature's control. See Towers, 2002 WL 32919576, at *10-16.

The ACC was created by Arizona's Constitution, and the language used in establishing the ACC's powers is broad. Article 15, section 3 provides:

> The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State for service

rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations; Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission may from time to time be amended or repealed by such Commission.

Ariz. Corp. Comm'n v. State ex rel. Woods, 830 P.2d 807, 812 (Ariz. 1992). The Woods court recognized that the ACC "has judicial, executive, and legislative powers." It also recognized that the Constitution gives the ACC "a strong role in protecting the public interest" through its regulation of public service corporations. Id. at 811.

Under A.R.S. 44-2036(A), the ACC may impose administrative penalties against a person found to have violated the Arizona Securities Act, such as it did here. Under subsection (B) of that statute, any penalties collected shall be deposited in the state general fund. The Arizona Legislature also created a securities regulatory and enforcement fund that the ACC administers and into which certain fees that the ACC collects are to be placed, in part to fund the Securities Division's educational, regulatory, investigative, and enforcement operations. See A.R.S. § 44-2039(A)-(C). The Legislature has provided that the monies in the fund are subject to being appropriated by the Legislature and that certain portions of the

fund are subject to being transferred to the general fund each year. See A.R.S. § 44-2039(B)-(D). Plainly, the State benefits from the ACC's "profits."

The ACC also points out that the State bears some of its losses since the Attorney General, the chief legal officer, represents the Securities Division as well as the ACC in matters that arise out of the Securities Division's activities. See A.R.S. § 40-106(A). In addition, the ACC has discretion to permit attorneys whom the Securities Division hires to represent the ACC in administrative or civil matters that arise out of the statutory provisions governing securities sales. See A.R.S. § 40-106(A). The Legislature has also authorized the ACC to employ attorneys to represent itself and each commissioner in matters involving its other powers and duties. See A.R.S. § 40-106(B).

Given this background, we conclude that the ACC exists in the state government rather than separate or apart from it. There are substantial interrelationships and interdependence between the ACC and other state departments or agencies. As noted by the bankruptcy court, the ACC functioned more like a department within the State than like an independent subsidiary.

Finally, although we recognize that some state governments may operate differently than the federal government, we find no relevant distinctions here. Like most states, Arizona acts through its departments, agencies and commissions. Indeed, in adopting the public entity immunity statutes, the state Legislature made clear that the state and its agencies, boards, commissions or departments are the same. See A.R.S. § 12-820(8)

-19-

("'State' means this state and any state agency, board, commission or department.").

In sum, the bankruptcy court correctly determined that the ACC and the State should be treated as a unitary creditor. Accordingly, the mutuality requirement has been satisfied and offset of the attorneys' fees, costs and interest amounts that the ACC owes Debtors were proper.[9]

**D.    Debtors' Motion to Strike**

On September 2, 2016, Debtors filed a motion to strike under Civil Rule 12(f) with the Panel.  There, Debtors argue that the ACC intentionally misrepresented itself to this Panel as two different creditors - both the ACC and the State. Debtors assert that only the ACC was a party to these proceedings and the State has never been a party, never filed a request for determination of discharge of any of their debts, never filed a judgment lien, never garnished wages from Debtors, and never received a determination that its debt was nondischargeable.  Debtors point out that in the ACC's motion to strike brief filed on July 22, 2016, the ACC intentionally represented itself as the "State" multiple times.  "Each and every instance should be stricken from the record."  In addition, Debtors complain about the same type of statements made in the ACC's July 6, 2016 answering brief.

---

[9] We mention that § 553 authorizes setoff when the creditor's claim against the debtor arose before the commencement of the case.  The statute is inapplicable here because the attorneys' fee award to Debtors arose postpetition.  Further, § 553 does not create offset rights itself — it only confirms how nonbankruptcy offset rights apply in bankruptcy.

-20-

Besides moving to strike these allegedly false statements, Debtors take the opportunity to provide additional arguments as to why the ACC is not a creditor vis-a-vis the administrative penalty debt and why the debt was no longer collectible by the State or the ACC. According to Debtors, the ACC's judgment lien listed only the ACC as the creditor of the restitution debt and the administrative penalty debt. Debtors argue that the ACC had no authority to list the penalty debt within its judgment lien. They further assert that the ACC's judgment lien was effective for only five years. They contend the ACC's re-recording was on May 8, 2016, but the date of entry of the original judgment was May 6, 2010, so the re-recording was too late. They also note again that the State was not listed as a judgment creditor in the re-recording and thus the renewal is ineffective as to the State. They complain of other discrepancies as well.

Debtors rely on Civil Rule 12(f) as the basis for their motion to strike. Under Civil Rule 12(f), a court may strike a pleading or any portion of a pleading that is "redundant, immaterial, impertinent, or scandalous." By its terms, Civil Rule 12(f) applies only to pleadings. The targets of Debtors' motion to strike are statements made in the ACC's motion to strike and its answering brief. Neither a motion nor a brief is a pleading. See Civil Rule 7(a) (listing the types of pleadings that may be filed in federal court); Sidney–Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Therefore, the requested relief is not available under Civil Rule 12(f).

Liberally construing the motion to strike, Debtors may also be suggesting that this Panel should exercise its authority

-21-

under some other provision of law or under its inherent authority. However, Debtors' motion is deficient and procedurally improper. We have reviewed Debtors' allegations pertaining to the ACC's renewal of the judgment and the re-recording discrepancies in the context of the record. Those arguments, which Debtors also presented at oral argument in this case, were raised for the first time on appeal. We do not consider issues raised for the first time on appeal. Golden Gate Hotel Ass'n v. City & Cty. of S.F., 18 F.3d 1482, 1487 (9th Cir. 1994). In addition, the disputed statements that Debtors complain about do not amount to scandalous or impertinent matters. Rather, whether the State and the ACC are unitary creditors has a bearing on the subject matter of this appeal. See Wolk v. Green, 516 F. Supp. 2d 1121, 1133-1134 (N.D. Cal. 2007) (the remedy of striking a pleading should generally be granted only to avoid prejudice to the moving party or when "it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation"). Finally, Debtors improperly use their motion to strike as an opportunity to provide arguments not addressed in their briefs. Using a motion to strike for that purpose is improper. For these reasons, Debtors' motion to strike is denied.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.