667 P.2d 738

NATIONAL SALES & SERVICE CO.,
INC., an Arizona corporation,
Petitioner,

v.

The SUPERIOR COURT OF MARICOPA
COUNTY ARIZONA and the Honora-
ble David L. Grounds, Respondent,

and

Bruce ALPER, Real Party in Interest.

No. 16321–SA.

Supreme Court of Arizona,
En Banc.

July 21, 1983.

Ronald W. Meyer, Phoenix, for petitioner.

Joseph F. Causey, Phoenix, for Bruce Al-
per.

HAYS, Justice.

This case comes to us on the petition of
National Sales for a special action. Peti-

tioner brought its special action after the Superior Court in Maricopa County denied its motion seeking an order directing the real party in interest, attorney Bruce Alper, to surrender files and certain books and records of petitioner corporation. We have jurisdiction pursuant to article 6, § 5 of the Arizona Constitution and Rule 8, Special Actions Rules of Procedure, 17A A.R.S.

These are the facts material to a resolution of the controversy. Alper was hired by petitioner to bring suit against Louis and Stephanie Petrossi, and petitioner made a written agreement with Alper to pay for his services on an hourly basis. The suit was filed and eventually set for trial.

In September 1982, shortly before the October trial date, Alper and petitioner began to argue over fees and retainers. The disagreement became aggravated and Alper filed a Motion to Withdraw as Counsel. National Sales retained attorney Ronald Meyer to continue work on the case against Petrossi, and Meyer filed a Notice of Appearance and a Motion to Substitute as Counsel. The court allowed the substitution and continued the October trial date.

Alper refused to turn over the files or the corporate books and records in his possession when Meyer asked him to do so. Alper asserted a "retaining lien" and took the position that the lien entitled him to keep the files, books and records until he was paid the money he had earned representing National Sales against the Petrossis. Meyer filed a motion in the Superior Court seeking an order compelling Alper to surrender the file. After a hearing, the court denied that motion. The motion was renewed on November 17, 1982, and, again, denied. On January 5, 1983, we accepted jurisdiction of National Sales' Petition for Special Action. In this opinion we consider the question of whether Arizona recognizes an attorney's retaining lien in a file after he withdraws as counsel on account of a fee dispute.

There are two types of attorney's liens which have been recognized in American jurisdictions. Arizona case law has addressed so-called "charging liens" which attach to the funds or other property created or obtained by the attorney's efforts. We have held that such a lien arises only when it appears that the parties looked to the fund itself for the payment of the attorney's fee. *Linder v. Lewis, Roca, Scoville & Beauchamp,* 85 Ariz. 118, 333 P.2d 286 (1958). The record in this case reveals no evidence of such an intent nor is there a specific fund. For that reason little guidance is available to us from the Arizona cases which deal with charging liens.

Attorney Alper maintains that he has a "retaining lien" attached to the files, books and records which came into Alper's possession as a result of his representation of National Sales. The retaining lien, like the charging lien, is a device for securing payment of fees earned and sums advanced by the attorney. No Arizona appellate court has addressed the question of the validity of a retaining lien in our state. We note, however, that such liens are contemplated in the Code of Professional Responsibility, as adopted in Arizona. 17A A.R.S. Sup.Ct. Rules, Code of Professional Responsibility, rule 29(a), DR 5–103(A)(1).

■ Our appellate courts have, in the past, expressed their inclination to follow the principles of the Restatement of the Law when not bound by previous Arizona decisions or legislative enactments. *Advance Leasing & Crane v. Del E. Webb Corp.,* 117 Ariz. 451, 573 P.2d 525 (App. 1977). Following that guideline, we have found that the Restatement of Security (1941) recognizes a retaining lien in favor of an attorney in the following language:

§ 62. Persons Entitled to General Possessory Liens.

General possessory liens exist in favor of

. . . .

(b) an attorney at law, as security for the general balance due him for professional services and disbursements, upon the papers and other chattels of his client, which come into his possession in his professional capacity;

*Likewise,* Restatement (Second) of Agency § 464(b) (1957) recognizes a retaining lien in favor of an attorney at law as security for his fees and advances:

> § 464. When Agent Has Lien
>
> Unless he undertakes duties inconsistent with such a right or otherwise agrees that it is not to exist:
>
> . . . .
>
> (b) a factor, banker, or attorney-at-law has the further right to retain possession of money, goods, or documents until he is paid the amount due him upon the general balance of accounts created by transactions conducted by him as such factor, banker, or attorney[.]

The Restatement of Agency qualifies the lawyer's retaining lien by its mention of "duties inconsistent with such a right . . .," but we believe both rules are sound. We therefore hold that an attorney has a retaining lien as security for the general balance due him for professional services and disbursements upon the papers and other chattels of his client which come into his possession in his professional capacity. Attorneys and clients are, of course, encouraged to negotiate and agree upon compromises over disputed fees. Compromises and provisions to secure payment which avoid the assertion of the attorney's lien rights are obviously preferable to a lawsuit. *See* ABA Code of Professional Responsibility EC 2–23 (1977).

■ Because of the broad range of tasks a lawyer might undertake for a client, there can be no question that some of a lawyer's duties can be inconsistent with the assertion of his lien rights. It is our task, therefore, to examine this case for circumstances such as duties imposed by the Code of Professional Responsibility which limit the nature and extent of the attorney's retaining lien. The extreme limits of the reach of the lien are obvious. For example, we believe it is proper for the lien to apply to the lawyer's, and his staff's, research notes and internal memoranda concerning the case. This kind of paper work, the work product of the lawyer's efforts, is clearly the lawyer's property and remains his property at least until he is paid.

■ On the other hand, we believe it is improper for the lien to attach to a document given by the client to the lawyer for a purpose inconsistent with the fixing of a lien upon it. If, for example, a client brings an original document or instrument to a lawyer for delivery to another, then the client's purpose is inconsistent with the fixing of a lien upon the document or instrument. *See* Restatement of Security § 62, Comment i, Illustration 8 (1941). Likewise, if a client brings some book, document or other chattel to his lawyer for use as an exhibit at an impending trial, the client's purpose is inconsistent with the fixing of a lien upon the document. In either of the above cases the lawyer's duty to seek his client's lawful objectives and to avoid prejudice or damage to his client are inconsistent with his assertion of a retaining lien. *See* 17A A.R.S. Sup.Ct.Rules, Code of Professional Responsibility, rule 29(a), DR 7–101(A)(1) & (3).

■ Between these extremes lies a number of situations where a detailed record would be helpful in determining the existence of a lien and the propriety of its fixing on a given document. It is our belief that this case falls in that area between the extremes where the inquiry must be particularized to the individual documents demanded by the client and the details of the procedural posture of the case. No court can precisely determine the existence or possibility of prejudice to the client without such information. We believe that petitioner could have made such a showing in this case, but it appears that he did not. This particular dispute was framed, in the trial court, as a fight over possession of an amorphous and vaguely defined entity, "the file." We hold that the trial court abused its discretion by ruling on the motion as to "the file" without requiring the parties to particularize their dispute.

Accordingly, we remand to the trial court for a further hearing. It appears from the record that petitioner knows what was turned over to attorney Alper in the way of

corporate books and records. It further appears that petitioner knows or can easily ascertain what pleadings have been filed on its behalf by Alper. On rehearing it will be petitioner's burden to establish, with particularity, the documents he contends Alper is not entitled to retain and the reasons, consistent with this opinion, why Alper's lien rights should not extend to those documents.

We believe the reasonable behavior of the parties and the trial court's sound discretion can combine to create a record sufficiently detailed that an informed ruling can be made by the trial court. Accordingly, we set aside the ruling of the Superior Court and direct that it set petitioner's motion to surrender file for rehearing. Because this controversy involves a previously unsettled point of law, we direct that each party shall bear its own fees and costs for this special action.

Remanded for further proceedings.

HOLOHAN, J., concurs.

FELDMAN, Justice specially concurring.

I concur in the portion of the court's opinion which recognizes the existence of an attorney's retaining lien. I also concur in the remand of the case to the superior court for determination of the application of the lien to various items in the file. I write because I am in the anomalous position of also agreeing with many of the fears expressed by the dissent with respect to the danger, real and apparent, that if recognized in Arizona the lien could be used in ways or for purposes that violate the ethical obligations which lawyers owe clients. Fully recognizing the necessity of obviating such mischief, I feel, nevertheless, that the problems may be avoided without abolishing the retaining lien concept in totality.

Properly characterized and limited, the lien cannot be used to accomplish results contrary to public policy and can have perfectly proper uses. The nature of the lien and the legitimate purposes which it serves are well described in the following words:

A retaining lien is akin to a lien of an artisan or mechanic, runs against the property, not against the attorney's debtor, and affords the attorney the same advantage as has any other workman who is entitled to retain things upon which he has worked until he is paid for his work.

7A C.J.S. *Attorney & Client* § 358, at 712 (1980) (footnote omitted). The lien has been almost universally recognized where the question has been raised. *See* Annot., *Rights and remedies of client as regards papers and documents on which attorney has retaining lien,* 3 A.L.R.2d 148 (1949). The dissent has not cited, nor have I found, a case explicitly refusing to recognize the existence of the lien under all circumstances. The California case cited in the dissent, *Academy of California Optometrists, Inc. v. Superior Court for the County of Sacramento,* 51 Cal.App.3d 999, 124 Cal.Rptr. 668 (1975), did not reach an unequivocal holding that the lien does not exist in California. It held, rather, that the contractual lien considered in that case would not be given effect where recognition would result in sanctioning unethical conduct—a result against public policy. The dissent here goes further and argues "that an attorney's retaining lien is contrary to an attorney's ethical duty to avoid foreseeable prejudice to the client ... and should be rejected by the courts of Arizona."

I would not go so far, though I do agree that the ethical concerns are both important and paramount. In my view, however, those ethical concerns are already protected by existing case law. For instance, both the opinion of the court and the dissent express concerns that the lien should not be used for the purpose of forcing the client to settle a disputed obligation in order to obtain books, papers or documents belonging to the client and for which the client has an urgent need. *See Midvale Motors, Inc. v. Saunders,* 21 Utah 2d 181, 442 P.2d 938 (1968), for an example of a case in which a court condoned such misuse. However, the better reasoned cases hold that where the assertion of the lien would have such an improper result, courts need not give it

effect. *See Miller v. Paul,* 615 P.2d 615 (Alaska 1980); *Academy of California Optometrists, supra; People v. Radinsky,* 182 Colo. 259, 512 P.2d 627 (1973) (improper use of the claim of an attorney's retaining lien in order to extort fees despite prejudice to the client's cause is an ethical violation justifying disbarment).

Other principles established by case law solve many if not all of the problems which may be imagined. For instance, case law holds that the lien is "defeated or lost when the attorney unjustifiably terminates his relationship with the client, or when the attorney is justifiably discharged by the client." 7 Am.Jur.2d *Attorneys at Law* § 321, at 334 (1980); *Miller v. Paul, supra; see also* cases collected in Annot., 3 A.L.R.2d, *supra,* § 5, at 159–60.

Further, as the opinion of the court indicates, the lien should not and does not attach to items which come into the attorney's hands for purposes inconsistent with the attachment of a possessory lien. Trial exhibits, such as those involved in the case at bench, are an example. Other examples are where the attorney comes into the possession of funds or other property as a trustee, *Akers v. Akers,* 233 Minn. 133, 46 N.W.2d 87 (1951), or pursuant to court order, *Severdia v. Alaimo,* 41 Cal.App.3d 881, 116 Cal.Rptr. 405 (1974). It has also been held that even though the lien attaches, a court may order the attorney to produce the material for inspection where the interests of judicial administration so require. *Browy v. Brannon,* 527 F.2d 799 (7th Cir. 1976). In summary, the law recognizes that the lien does not attach whenever the recognition of the possessory right is inconsistent with public policy, with the attorney's obligations to the client, or the attorney's duties to the court.

In my view, it is unwise to abolish or totally refuse to recognize the lien. Unfortunately, there are occasions when some lawyers seek to take advantage of clients, but there are also many instances where clients seek to take advantage of lawyers or where the assertion of the lien is fair and proper and does not violate ethical obligations. In those situations I think it not too much to expect that lawyers should have the same right to a possessory lien as that which is possessed by factors, bankers, and other professions. In addition, lawyers should be entitled to assert the same protection by reason of a possessory lien as are others when a client has become insolvent, has taken the benefit of a bankruptcy proceeding, has made an assignment for the benefit of creditors or has had a receiver appointed. *See* 7 Am.Jur.2d, *supra,* at 334–35; *Browy v. Brannon, supra.* Depriving lawyers of all protection will force many to insist upon payment in advance, a practice which may also present ethical and policy problems.

I therefore agree with the proposition that attorneys' retaining liens are recognized in this state. Since the practice of law requires that the interests of the client be considered before those of the lawyer, I would hold that the lien will not be recognized or allowed to attach in situations where its recognition or attachment is contrary to the ethical duties which the lawyer owes a client or in the other situations recognized by case law and discussed above. Thus, I also join in refusing to recognize the attachment of the lien to the documents, papers and records of the client which were given to the lawyer for the purpose of trial preparation or actual use at trial. Nor, under the circumstances of this case, would I recognize attachment of the lien with respect to any documents necessary for the efficient presentation of the client's cause at trial. The case at bench raises the issue of the applicability of these exceptions. Thus, I concur in remand, but agree with the dissent that the burden should be on the attorney to itemize the material in his or her possession to establish that such items are properly subject to the possessory lien.

CAMERON, Justice, dissenting.

Because I do not believe an attorney should be permitted to withhold his client's papers as a means of securing payment of his fee, I dissent.

I disagree that our Code of Professional Responsibility contemplates "attorney's retaining liens." DR 5–103(A)(1), Rule 29(a), Rules of the Supreme Court, 17A A.R.S., permits a lawyer in specific circumstances to "acquire a propriety interest *in the cause of action.*" (Emphasis added.) Therefore, if anything, it contemplates a charging lien on the proceeds of a case, not a retaining lien on a client's papers. To the contrary, the Arizona Code of Professional Responsibility implies that an attorney's retaining lien is inconsistent with his duties to his client:

> In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled * * *. DR 2–110(A)(2), Code of Professional Responsibility, Rule 29(a), Rules of the Supreme Court, 17A A.R.S.

The obvious purpose of this rule is to provide a smooth transition of representation in the event a lawyer withdraws, to encourage cooperation with substitute counsel, and to minimize the adverse impact on the interests of the client. Even if the command to deliver all papers and property to which the client is "entitled" may not be self-defining, the mandate to "avoid foreseeable prejudice to the rights of the client" implies that an attorney may not withhold the file to enforce the payment of the attorney's fees. Withholding documents which a client needs to conduct imminent litigation contravenes the public policy stated in this rule. Such action by former counsel actively produces, rather than avoids, prejudice to the client.

I acknowledge that Restatement (Second) of Agency, § 464(b) (1957) and Restatement of Security, § 62(b) (1941) contain provisions for attorney's retaining liens. However, we do not follow the Restatement blindly, *Small v. Ellis,* 90 Ariz. 194, 199, 367 P.2d 234, 237 (1961); *Reed v. Real Detective Publishing Co.,* 63 Ariz. 294, 303, 162 P.2d 133, 138 (1945), and so we are not constrained to adopt particular provisions of the Restatement where we do not believe they reflect sound public policy.

While the ethics committee of our state bar has refrained from taking a position on attorney's retaining liens, waiting instead for the courts to speak first, see Opinions 81–32, 76–14, 238 (1968), 99 (1962), Committee on Ethics, State Bar of Arizona, a number of ethics committees in other states have found ethical conflicts inherent in attorney's retaining liens and have condemned their use. Using terms such as "obstructionism" and "harassment," the Maine Professional Ethics Committee has stated that " * * * such tactics demean the character of our profession * * * and thus should not be condoned." They concluded, " * * * whether or not an attorney's lien on the file existed at common law, the discharged attorney may not ethically refuse to turn over the file of his former client." Opinion 39, Maine Bar Bulletin, vol. 10, no. 3, p. 7 (1976). The Louisiana committee on professional ethics has similarly held an "attorney may not condition the release and return [of] papers upon payment of his fee and costs." Opinion 227, Louisiana Bar Journal, vol. XII, no. 4, p. 336 (1965). Invoking the duty to "avoid foreseeable prejudice to the rights of the client" of DR 2–110(A)(2), the Ethics Committee of the Texas Bar has decided "a lawyer ethically may not attempt to enforce [an] attorney's lien by retaining possession of his client's property, money and papers where the client's legal rights would be prejudiced." Opinion 395, Texas Bar Journal, vol. 42, no. 5, p. 439 (1979). The Council of the North Carolina State Bar has likewise held "when client discharges attorney in the middle of litigation and requests that attorney return to client his papers, attorney cannot decline to return them until his fee is paid in full." Opinion No. 7, 241 N.C. 756 (1943), reaffirmed, Opinion 473, The North Carolina Bar, vol. 12, no. 1, p. 15 (1965). *Cf.* American Bar Association, Committee on Ethics and Professional Responsibility, Informal Opinion 1461 (1980) (acknowledging that in some situations assertion of attorney's lien

is unethical because unduly prejudicial to client's interests).

Based on the same ethical concerns, a California court has rejected the attorney's retaining lien provisions of the Restatement. In *Academy of California Optometrists, Inc. v. Superior Court for the County of Sacramento,* 51 Cal.App.3d 999, 124 Cal. Rptr. 668 (1975), an attorney was discharged as a result of a fee disagreement, and refused to turn over the files to substitute counsel unless his fees were paid in full. The matter the attorney had been handling was currently in litigation with an important trial deadline approaching, yet like respondent in the present case, the former attorney claimed the right to withhold the client's papers under an "attorney's retaining lien." The court held this placed the attorney

> in the untenable position of insisting upon the * * * right to damage his client's cause (the same cause which he hitherto espoused and which generated fees to him, both disputed and undisputed), unless the client pays him the disputed fees in full and foregoes his right to honestly litigate the dispute. The client's cause, sacred as it is to a member of the legal profession, may not be so abused. *Id.* at 1005, 124 Cal.Rptr. at 672.

The California court indicated that it was a withdrawing lawyer's ethical duty stated in DR 2–110(A)(2) to avoid foreseeable prejudice to the rights of his client, and concluded, "To enforce the lien in question here would be to condone a violation of the foregoing ethical duties owed by a lawyer to his client, contrary to the public policy of this state." *Id.* at 1006, 124 Cal.Rptr. at 672. The court therefore rejected the validity of the attorney's retaining lien both contractually and as a matter of state common law. *See id.* at 1003, n. 1, 124 Cal.Rptr. at 671, n. 1.

I agree. In order for such liens to be effective as collection remedies, the retention of the property must be detrimental to the client's interests. I therefore would hold that an attorney's retaining lien is contrary to an attorney's ethical duty to avoid foreseeable prejudice to the client, DR 2–110(A)(2), supra, and should be rejected by the courts of Arizona.

I am troubled not only by the court's adoption of the attorney's retaining lien, but also by the manner in which it is to be implemented. The lien is to be limited by an uncertain standard, and the lawyer is invited to litigate the scope of the lien while retaining the entire file. This at least allows the attorney to delay, if not harm, his client's legal interests. The uncertain standard appears to be based in part on the concept of "work product," a distinction based on property law—i.e. who "owns" the document, rather than on the ethical duty to protect the client from foreseeable harm. The examples of "work product" cited by the majority are those the withholding of which are likely to cause little prejudice, such as an attorney's preliminary notes. The withholding of other items which may properly be characterized as "work product" can work enormous prejudice to the client. Besides objecting to the standard adopted, I also disagree strongly with placing the burden on the client to prove the contents of a file to which he is denied access. I would place the burden on the attorney to list all documents in the file, and to demonstrate that withholding them is not likely to prejudice the client's interests.

Most disturbing about the opinion of the majority is its inability to find on this record that the actions of counsel in the instant case are in conflict with ethical duties, or at least are outside the proper scope of a lawyer's retaining lien. The record reflects that attorney Alper was counsel of record in a case set for trial in early October 1982. A fee disagreement arose between Alper and his client in September 1982, and a substitution of counsel was allowed by the trial judge on 4 October 1982. The court reset the trial for 26 January 1983, but specifically admonished, "Counsel are advised [this] trial setting will be a FIRM setting." (Emphasis in original.) With knowledge of this fact, and in the face of expressions by new counsel of his urgent

need of the files in order to carry on the litigation, attorney Alper refused to turn over any papers. The record discloses that the files contain not only pleadings, depositions and correspondence, but also the client's original corporate record books and documents evidencing the sale of property at issue in the underlying litigation. Attorney Alper had allowed his former client to approach within days of the trial without access to these important documents as of the time we accepted jurisdiction. I submit that this is an extreme case, in which a client's legal interests have actually been imperiled, and not an equivocal case as suggested by the majority.

In what I have said I do not imply that Mr. Alper intentionally ignored the Code of Professional Responsibility. Before this case our courts had never discussed the propriety of or limitations upon attorney's retaining liens. What I do suggest, however, is now that we have had the opportunity to consider the subject, similar conduct should not be condoned.

In the litigation context, not only the client's legal interests are at stake, but also the state's interest in orderly and timely litigation. Rule XII(c)(3) of the Uniform Rules of Practice of the Superior Court, 17A A.R.S. is designed to protect these interests upon substitution of counsel. The rule provides,

(c) Withdrawal and substitution

&ast; &ast; &ast; &ast; &ast; &ast;

(3) No attorney shall be permitted to withdraw as attorney of record after an action has been set for trial, unless there shall be endorsed upon the application therefor either the signature of an attorney stating that he is advised of the trial date and will be prepared for trial, or the signature of the client stating that he is advised of the trial date and has made suitable arrangements to be prepared for trial.

The rule seeks to protect these interests by assuring other arrangements are made to adequately prepare the case for trial. It appears the trial judge neglected the formal requirements of Rule XII(c)(3) in granting the withdrawal of attorney Alper. The trial judge should not have permitted Alper to withdraw until suitable arrangements had been made allowing new counsel to certify he would be prepared for trial. This rule provides independent grounds in the instant case for reversing the denial of the Motion to Surrender File. Having granted the substitution, after setting a firm trial date, it was the trial judge's duty to see that new counsel was not prevented from preparing for trial.

An attorney who claims he is owed a fee is not without a sufficient remedy. The attorney is free to pursue payment of the debt through a separate action, as is any creditor. I feel that remedy best preserves the respective private and public interests. Because I believe retaining liens to be an inappropriate method of collecting attorney's fees, and particularly so under the facts of this case, I respectfully dissent.

GORDON, Vice Chief Justice, concurring.

I concur in the dissent of Justice Cameron.