NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BEAUCHAMP LAW OFFICE PC, et al., *Plaintiffs/Cross-Defendant/Appellants*,

*v.*

GUST ROSENFELD PLC, *Defendant/Cross-Claimant/Appellee*.

No. 1 CA-CV 17-0250
FILED 4-19-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-009661, CV2013-014712 (Consolidated)
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Oracle Law Group, Phoenix
By Melanie E. Beauchamp
*Counsel for Plaintiffs/Cross-Defendant/Appellants*

Gust Rosenfeld P.L.C., Phoenix
By Charles W. Wirken
*Counsel for Defendant/Cross-Claimant/Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kenton D. Jones joined.

---

**M O R S E**, Judge:

¶1 Appellants Melanie Beauchamp ("Beauchamp") and Beauchamp Law Office ("BLO") appeal the superior court's judgment following a bench trial in favor of Appellees Gust Rosenfeld P.L.C. ("Gust"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 This case involves a dispute over attorney fees in connection with the settlement of a medical malpractice case. In October 2010, C.B. and her husband J.B. (collectively the "Clients") met with Melanie McBride ("McBride"), an attorney with Gust, regarding complications from C.B.'s recent surgeries. The Clients subsequently retained Gust to represent them and entered into a written contingent-fee agreement. The fee agreement provided for a fee of one-third of any recovery after the initiation of litigation, or reasonable compensation from recovery in the action based upon specified hourly rates if the Clients terminated Gust before resolution of the case. Over the next two years, Gust spent significant time developing the case.

¶3 In December 2012, McBride resigned her position with Gust, and the Clients elected to transfer their file to McBride at her new law firm. Shortly thereafter, McBride left her new law firm and eventually joined BLO. McBride and BLO formally substituted in as co-counsel of record for the Clients in March 2013. BLO then entered into a fee agreement with the Clients which provided for a fee of one-third of any recovery.

¶4 On July 17, 2013, McBride quit her employment at BLO. The Clients chose to keep BLO as their attorney because their case was scheduled to go to mediation later that month. Less than a week after McBride quit, Gust sent a letter to BLO providing notice of its lien of approximately $145,000 in fees and expenses previously incurred in the case. BLO, Beauchamp, and a BLO employee who is not a party to this

appeal officially substituted in as counsel for the Clients and ultimately obtained a settlement of $500,000 which was confirmed in late August 2013.

¶5        BLO distributed $185,225.83 of the settlement proceeds to the Clients, paid itself $169,774.17, and held the remaining $145,000 in trust in recognition of Gust's lien.  That same day, BLO sent a letter to Gust, alleging Gust told her there would be no liens asserted by Gust on the Clients' case and claiming Gust had been negligent in the representation of the Clients and performed little work.  Gust responded the following day, disputing BLO's letter in every respect and reinforcing its claim to a portion of the proceeds of the Clients' settlement.  BLO demanded an itemized list of charges, and Gust provided a copy of its internal Prebill Summary.  Approximately two weeks later, Gust sent BLO a revised invoice.  Two time entries regarding drafts for potential closing agreements appeared on the Prebill Summary but did not appear on the invoice.

¶6        In October 2013, BLO initiated a lawsuit for declaratory relief against Gust, the Clients, and McBride.  Various counterclaims and cross-claims were subsequently asserted.  At a hearing on July 21, 2014, the superior court noted that all parties had agreed that the total amount of attorneys' fees owed by the Clients should not exceed one-third of the total settlement, and ordered BLO to distribute $15,558.77 of the $145,000 that it had retained in its trust account to Gust for payment of costs incurred while representing the Clients, and to distribute the balance of the account to the Clients.  The superior court also determined Gust had a lien against the one-third contingent fee that BLO had received from the settlement proceeds in the underlying case.  After this ruling, BLO and Gust dismissed their respective claims against the Clients.

¶7        A bench trial was held in December 2016.  Gust was treated as the plaintiff at trial because, as a result of various rulings over the course of the litigation, the only claims left for the trial court to resolve were Gust's claims against BLO for unjust enrichment and declaratory relief.  Gust presented expert witness testimony in support of the importance of the work they performed on the underlying case.  The expert witness offered the court two approaches for apportioning the fees between Gust and BLO.  The first method would be to total the billings of each firm, determine the percentage that each firm's billings bear to the total, and then apply the percentage applicable to each firm to the amount of the fee award.  The second approach would be to award each firm a percentage share of the one-third of the total settlement proceeds the parties had agreed was the total amount of attorneys' fees owed by the Clients.  Those percentages

would be based upon the respective values the court believed each of the parties added toward the obtaining of the settlement.

¶8        After considering the evidence, the superior court entered judgment in favor of Gust, finding it had a valid charging lien on the funds recovered in the underlying lawsuit.  The superior court found that under the doctrine of unjust enrichment, BLO was unjustifiably enriched by Gust's work on the underlying suit, and therefore owed Gust restitution.  The court was not persuaded by BLO's arguments that Gust's only remedy could be against the Clients, that Gust added no value to the case, and that Gust acted improperly.

¶9        The superior court awarded a *quantum meruit* measure of damages to Gust.  After conducting a thorough review of Gust's invoices, the court calculated Gust's portion of the contingency fee to be $125,532.50.  As this amount was close to 75% of the total contingency fee, the court accepted Gust's expert's testimony as to the proportion of the contributions and awarded Gust 75% of the contingency fee in the underlying case and BLO 25%.

¶10        Before trial, BLO filed a motion for sanctions relating to a document that Gust drafted in January 2013.  Gust's Prebill Summary provided that one of Gust's attorneys spent .5 hours drafting a "[c]losing letter to client, discussing share of proceeds for fees and costs incurred by Gust."  Gust did not produce this draft letter until approximately one week before trial.  The Prebill Summary also discussed drafting a "letter to clients regarding change of counsel firms," as well as a "potential agreement with Melanie [McBride] and clients for sharing of fees and reimbursement of expenses."  Gust never produced this draft and asserted that it was lost when an employee's computer crashed.

¶11        In its Findings of Fact and Conclusions of Law, the superior court addressed the motion for sanctions, finding that the documents in question were irrelevant because they were never approved by Gust or circulated outside of Gust.  In addition, the court found that the evidence did not suggest Gust intentionally "destroyed" the draft document.  The court denied BLO's motion for sanctions.

¶12        BLO timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

4

**¶13** BLO argues the superior court erred by (1) finding unjust enrichment absent impoverishment, improper conduct, and privity of contract; (2) applying *quantum meruit* as the measure of damages; (3) allowing the claim against BLO to go forward; and (4) failing to sanction Gust for discovery violations.

**¶14** We review questions of law *de novo*. We will accept the superior court's factual findings, "unless they are clearly erroneous." *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 106, ¶ 13 (App. 2013). "To be clearly erroneous, a finding must be unsupported by any reasonable evidence." *In re Van Dox*, 214 Ariz. 300, 304, ¶ 15 (2007). We view the evidence in the light most favorable to sustaining the superior court's judgment and will uphold it if it is correct for any reason. *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 473 n.1 (App. 2015); *Citibank (Ariz.) v. Van Velzer*, 194 Ariz. 358, 359, ¶ 5 (App. 1998). We do not reweigh conflicting evidence on appeal. *Great W. Bank*, 238 Ariz. at 478, ¶ 22.

## I. Unjust Enrichment

**¶15** The superior court found BLO was unjustly enriched by Gust's work on the Clients' case. "Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 541, ¶ 31 (App. 2002). As the trial court correctly stated, the party asserting a claim of unjust enrichment bears the burden of showing: "(1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of any remedy at law." *Mousa v. Saba*, 222 Ariz. 581, 588, ¶ 29 (App. 2009).

**¶16** BLO first argues the superior court erred in finding a connection between Gust's impoverishment and BLO's gain because Gust's expenditure of funds and time was for the Clients' benefit, not BLO's. The superior court's detailed factual findings, however, establish that the two years of work Gust performed led to BLO's successful settlement. Though BLO argues that Gust did little to nothing of value in the underlying case, she does not argue that the trial court's factual findings are erroneous. *See* Ariz. R. Civ. P. 52(a) ("Findings of fact . . . must not be set aside unless clearly erroneous."). Recognizing the connection between the enrichment and the impoverishment, the superior court did not err when it concluded that "Gust was impoverished by devoting hours of professional time to the Clients' case without compensation, while BLO was correspondingly enriched because it benefited from Gust's work product."

**¶17** Next, relying upon *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314 (App. 2012), BLO argues that Arizona law precludes liability under unjust enrichment because she did not engage in improper conduct nor have privity with Gust. This argument fails for two reasons. First, the law in this situation is contrary to BLO's argument. Rather than unjust enrichment requiring the existence of a contractual arrangement, *i.e.*, requiring privity, the doctrine of unjust enrichment cannot be applied where there is a specific contract which governs the relationship of the parties. *Brooks v. Valley Nat'l Bank*, 113 Ariz. 169, 174 (1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.").

**¶18** Second, unjust enrichment does not necessarily require a finding of improper conduct. BLO contends that *Wang Electric* added an "improper conduct" element to all analyses of unjust enrichment. This is incorrect. *Wang Electric* articulated a limitation upon the reach of unjust enrichment claims in situations involving subcontractors, tenants, and property owners. 230 Ariz. at 320, ¶ 17. The court found that claims of unjust enrichment do not stretch so far as to make property owners "unwitting guarantors of their tenants' contracts for improvements." *Id*. at ¶ 16. Accordingly, *Wang Electric* held that "a contractor hired by a tenant to make improvements to leasehold premises, or subcontractors retained by that contractor, can recover unpaid monies for making tenant improvements from the property owner only when that owner has engaged in improper conduct." *Id*. at ¶ 17. Because this case does not involve such a situation, the holding in *Wang Electric* regarding improper conduct does not apply.

**¶19** Here, the superior court correctly noted that although a claim of unjust enrichment requires a showing of enrichment "without justification," the term "without justification" is not synonymous with "wrongfully" or "maliciously." *See, e.g., Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 210, ¶ 10 (App. 2010) (fact that defendant "committed no tortious or wrongful act" and "had no knowledge" of third party's wrongful acts did not "preclude [plaintiffs] from recovering on their unjust enrichment claim"). Ultimately, Gust was not required to demonstrate privity or that BLO engaged in wrongful conduct to prevail on its unjust enrichment claim.

**¶20** BLO contends that limitations and equitable defenses apply because Gust failed to follow the industry standards for lien noticing and deprived BLO of the opportunity to refuse the work for which Gust's fees claim existed. Like the superior court, we find no authority for the

proposition that Gust's failure to assert a lien sooner should result in the waiver of its subsequent but well-supported claims. A charging lien becomes binding upon a third party when the party has notice of the lien. *See Millsap v. Sparks*, 21 Ariz. 317, 322 (1920) (charging lien is not perfected until notice has been given to obligor). When Gust filed its claim for fees, the Clients, and presumably their by-then current counsel, obtained notice of Gust's claim.

**¶21** Additionally, BLO knew that Gust previously represented the Clients through its employee McBride, and thus knew that Gust could potentially assert a lien against the ultimate settlement. At trial, both Gust and BLO presented evidence that the lien was discussed shortly after BLO agreed to take the Clients' case[1] and that is repeated within BLO's Opening Brief. BLO's knowledge of Gust's potential charging lien negates her argument that she did not have timely notice of it.

**¶22** On appeal, BLO asserts defenses of accord and satisfaction, waiver, estoppel, fraud, and failure of consideration. However, because BLO did not assert these defenses below, and, on appeal, fails to cite authorities or state with particularity why or how the determination of the trial court might be deemed error, these arguments are waived. *Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009); *Modular Sys., Inc. v. Naisbitt*, 114 Ariz. 582, 587 (App. 1977); ARCAP 13(a)(7)(A).

## II. *Quantum Meruit*

**¶23** BLO argues the superior court misapplied *quantum meruit* as the measure of damages because it is only available in quasi-contractual circumstances. Not so. *Quantum meruit* is the correct measure of damages imposed when a party prevails on the equitable claim of unjust enrichment. *W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, 590, ¶ 27 (App. 2004).

**¶24** BLO further argues that the superior court erred in its application of *quantum meruit* because such claims are measured by the loss to the plaintiff, not gain to the defendant. However, it is well settled that "[r]ecovery under *quantum meruit* is based on the value of services rendered." *Landi v. Arkules*, 172 Ariz. 126, 135 (App. 1992). Here, the superior court properly found that the value of the services rendered is the value of the benefit conferred to BLO. The superior court performed a

---

[1] At trial, BLO asserted that this discussion included an agreement by Gust not to assert a charging lien. The superior court found that BLO's claims were not credible.

detailed analysis of the invoices submitted by Gust, declined fees that were frivolous or not advantageous to the litigation, and arrived at a conferred value of 75% of the contingency fee.

**¶25** "Fashioning an equitable remedy is within the trial court's discretion, and it will not be disturbed on appeal absent an abuse thereof." *Loiselle*, 224 Ariz. at 210, ¶ 8. The superior court did not abuse its discretion in its careful analysis calculating the proper measure of damages.

### III.    Action Against Successor Law Firm

**¶26** BLO argues Gust's only avenue for recompense is through the Clients. Per BLO, there is no legal support for Gust's claim that an attorney may use a charging lien to satisfy pre-judgment fees, nor is there precedent to support the claim that Gust may recover attorneys' fees from another law firm. We disagree.

**¶27** "[A]n attorney under a contingency fee contract who is discharged prior to fulfillment of the contract is entitled to reimbursement for the reasonable value of his services." *Garrett v. Garrett*, 140 Ariz. 564, 567 (App. 1983). A charging lien allows a lawyer to recover fees and costs from the fund or property ultimately recovered on behalf of the client; charging liens are not limited to clients. *See Linder v. Lewis, Roca, Scoville & Beauchamp*, 85 Ariz. 118, 123 (1958) (lien effective against assignee of client's judgment); *see also Holly v. State*, 199 Ariz. 358, 360, ¶ 10 (App. 2001) (lien took priority over State's right to statutory setoffs for inmate costs). The charging lien is binding upon a third party when the party has notice of the lien. *See Millsap*, 21 Ariz. at 322 (noting that a charging lien is perfected when "notice has been given to the obligor against whom it is asserted," or when "such person has knowledge of the claim, or has notice of facts sufficient to put a prudent person upon inquiry"). Here, Gust represented the Clients under a contingent fee agreement and remained entitled to the reasonable value of the services rendered to the Clients after their representation ended. Its charging lien properly attached to the settlement monies when it provided BLO written notice of the lien.

**¶28** BLO also argues Gust must be the attorney who obtained the judgment for its charging lien to apply. There is no rule or case authority supporting BLO's position. Charging liens attach to the funds created or obtained by the attorney's efforts. *Nat'l Sales & Serv. Co. v. Superior Court*, 136 Ariz. 544, 545 (1983). Though Gust did not represent the Clients by the time the judgment was obtained, the superior court found that their efforts

were instrumental in generating the settlement. Thus, Gust was properly entitled to the portion of the funds obtained that it helped generate.

## IV.    Sanctions

**¶29**        BLO argues the superior court erred when it declined to sanction Gust for "destroying seminal documents." The document in question is a draft fee agreement between Gust and the Clients referenced in Gust's Prebill Statement. BLO contends this court must remand the issue to the trial court for specific findings as to Gust's intent in drafting the agreement and then "losing" it. Despite the superior court's nearly three-page discussion of the lost document, BLO claims the court did not make any findings on the issue.

**¶30**        "A trial court has broad discretion in ruling on disclosure and discovery matters, and this court will not disturb that ruling absent an abuse of discretion." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013). We defer to the trial judge with respect to factual findings and will affirm them so long as they are supported by reasonable evidence. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10 (2003).

**¶31**        The superior court found that there was no evidence that Gust destroyed the draft fee agreement. Moreover, the court found the document irrelevant because it would not have been binding as it was never approved by Gust's management, nor was it sent to the Clients. BLO has not shown that the loss of the draft agreement caused any harm. Therefore, it has not shown that sanctions would be appropriate. Thus, there was no abuse of discretion in denying BLO's motion for sanctions.

## CONCLUSION

**¶32** For the foregoing reasons, we affirm. Gust requests its taxable costs on appeal. We award Gust taxable costs on appeal in compliance with ARCAP 21.

**¶33** Additionally, Gust requests we impose sanctions against BLO pursuant to ARCAP 25 for filing a frivolous appeal. **"[**A] frivolous appeal is one brought for an improper purpose or based on issues which are unsupported by any reasonable legal theory." *Johnson v. Brimlow*, 164 Ariz. 218, 222 (App. 1990). Gust requests BLO's share of the contingency fee, approximately $20,000, as a sanction penalty. We impose ARCAP 25 sanctions with "great reservation." *Ariz. Tax Research Ass'n v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989). Under this standard, and in our discretion, we decline to impose the requested sanction against BLO.



AMY M. WOOD • Clerk of the Court
FILED: AA