NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

THE CALHOUN LAW FIRM, PLC, et al., *Plaintiffs/Appellants*,

*v.*

MIDFIRST BANK, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0832

FILED 11-3-2020

---

Appeal from the Superior Court in Maricopa County
No.  CV2018-002638 and CV2018-012139
CONSOLIDATED
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

---

COUNSEL

The Calhoun Law Firm PLC, Tempe
By S. Jay Calhoun
*Counsel for Plaintiffs/Appellants*

Sherman & Howard LLC, Phoenix
By Craig A. Morgan, Sean M. Moore
*Counsel for Defendant/Appellee Midfirst Bank*

Luzader Law PLLC, Phoenix
By William T. Luzader, III
*Counsel for Defendants/Appellees Harnisch*

---

**MEMORANDUM DECISION**

---

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Cynthia J. Bailey joined.

---

**C A T T A N I**, Judge:

¶1        The Calhoun Law Firm PLC ("Calhoun Law") appeals from the summary judgment and associated award of attorney's fees entered in favor of MidFirst Bank. Jay Calhoun ("Calhoun") in her personal capacity ostensibly appeals from the same judgment—in her case, a judgment and award of attorney's fees in her favor against MidFirst. For reasons that follow, we dismiss the appeal as to Calhoun in her personal capacity, and we affirm the judgment against Calhoun Law.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        This case revolves around creditors' competing claims to settlement proceeds (the "Disputed Funds") obtained by Fast Track Distributing, LLC in a separate lawsuit, *Fast Track Distributing, LLC v. Galco Manufacturing, LLC*, No. CV2014-093376 (Maricopa Cnty. Super. Ct. July 3, 2017) (final dismissal order after notice of settlement and stipulation for dismissal).

¶3        In January 2014, MidFirst loaned Fast Track $249,000, subject to a promissory note and security agreement granting MidFirst a lien on collateral including Fast Track's then-existing and after-acquired inventory, equipment, rights to payment, and general intangibles, as well as any proceeds from that collateral. MidFirst perfected its security interest by filing a UCC financing statement that same month. Fast Track later defaulted on the note, and although MidFirst recovered over $100,000 through the sale of other collateral, over $140,000 remained owing as of November 2017.

¶4        Meanwhile, in April 2014, Fast Track hired Calhoun Law to represent it in litigation against Galco, and Calhoun Law filed suit on Fast Track's behalf the next month. Fast Track asserted claims against Galco (and related individuals) that included conversion and unjust enrichment related to Galco's failure to pay for or return raw materials (and perhaps other property) provided by Fast Track, along with other claims for

misappropriation of confidential information, unjust enrichment, intentional interference with contractual relationship and business expectancy, aiding and abetting, trade dress infringement, fraud and negligent misrepresentation, commercial disparagement/injurious falsehood, and breach of the implied covenant of good faith and fair dealing.

¶5        After almost three years of litigation, Calhoun negotiated a $55,000 settlement for Fast Track. A few weeks later, however, Fast Track fired Calhoun Law and hired new counsel, who received the settlement payment from Galco. Calhoun immediately told new counsel that Calhoun Law had a charging lien against the settlement funds for what Calhoun claimed was over $95,000 in unpaid attorney's fees. New counsel paid himself out of the settlement funds, leaving a remaining balance of $46,932.50 in Disputed Funds, which were later deposited with the superior court.

¶6        Calhoun Law then sued Fast Track and its two subsequently hired attorneys and their firms, asserting (1) entitlement to a charging lien on the Disputed Funds for unpaid fees, (2) contract claims against Fast Track related to unpaid fees, and (3) misrepresentation, tortious interference with contract, and unjust enrichment against various combinations of defendants generally involving interference with Calhoun Law's representation of Fast Track and the disposition of the Disputed Funds. One month later, MidFirst sued Calhoun Law, Calhoun individually, and other potential claimants asserting entitlement to the Disputed Funds, and the two cases were consolidated.

¶7        The consolidated case eventually focused on a single, albeit multifaceted, issue: whether MidFirst or Calhoun Law was entitled to the Disputed Funds.[1] Calhoun Law moved for summary judgment based on its asserted attorney charging lien, and MidFirst filed a cross-motion for summary judgment based on its asserted security interest in the Disputed Funds as proceeds of its collateral.

¶8        The superior court granted summary judgment in favor of MidFirst and against Calhoun Law. First, the court concluded that Calhoun

---

[1]        The superior court dismissed MidFirst's claim against Calhoun as an individual as well as Calhoun Law's claims against one of Fast Track's later-retained attorneys and firms. Calhoun Law later settled with Fast Track and the other later-retained attorney and firm. All other potentially interested parties waived any interest in the Disputed Funds.

Law had no charging lien at all because Calhoun Law's hourly (not contingency) fee agreement with Fast Track did not show that the parties looked to the settlement funds for payment of attorney's fees as required for imposition of a charging lien. Second, the court concluded that MidFirst had a security interest in the Disputed Funds because the subject matter of the Galco litigation involved MidFirst's collateral, meaning the Disputed Funds were proceeds of that collateral (and thus also collateral subject to MidFirst's lien). Finally, the court reasoned that, even assuming a valid charging lien, MidFirst's lien would be senior to Calhoun Law's because MidFirst's security interest was first in time.

¶9 Over Calhoun Law's opposition, the superior court granted MidFirst a reduced award of $27,500 in attorney's fees under A.R.S. § 12-341.01(A). The court concurrently reconsidered a prior denial (without prejudice) of Calhoun's request for fees against MidFirst on the same statutory basis, awarding Calhoun individually $2,112.50 as requested in attorney's fees.

¶10 The superior court entered final judgment in favor of Calhoun against MidFirst (plus fees) and in favor of MidFirst against Calhoun Law (plus fees) as regards the Disputed Funds. Calhoun Law (and ostensibly Calhoun individually) timely appealed.[2] We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

**I.    Summary Judgment.**

¶11 Calhoun Law argues the superior court erred by denying summary judgment in its favor and granting summary judgment in favor of MidFirst, by (1) determining that Calhoun Law did not have an attorney charging lien against the Disputed Funds and (2) ruling that, even assuming Calhoun Law had a charging lien, MidFirst nevertheless held a perfected

---

[2]    Although Calhoun joined the notice of appeal, the final judgment was entirely in her favor: MidFirst's claim against her was dismissed outright, and she was awarded the full amount of attorney's fees (and costs) she requested. Calhoun thus was not aggrieved by the judgment. *See Gries v. Plaza Del Rio Mgmt. Corp.*, 236 Ariz. 8, 12, ¶ 14 (App. 2014). And as our jurisdiction is limited to appeals by a "party aggrieved by a judgment," ARCAP 1(d); *Kondaur Capital Corp. v. Pinal County*, 235 Ariz. 189, 192, ¶ 6 (App. 2014), we dismiss the appeal as to Calhoun only.

security interest in the Disputed Funds senior to any interest held by Calhoun Law. The first issue is dispositive.

¶12 Summary judgment is proper if there are no genuine issues of material fact and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). A plaintiff seeking summary judgment thus must "submit[] undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293, ¶ 20 (App. 2010). A defendant moving for summary judgment, in contrast, may simply "point out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the claim." *Orme Sch.*, 166 Ariz. at 310. The opposing plaintiff "may not rely merely on allegations . . . of its own pleading" and instead "must, by affidavits or as otherwise provided in this rule, set forth specific facts showing a genuine issue for trial." Ariz. R. Civ. P. 56(e); *see also Orme Sch.*, 166 Ariz. at 310.

¶13 We review de novo the superior court's summary judgment ruling, viewing the facts and all reasonable inferences in the light most favorable to the party against whom judgment was entered. *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 14 (App. 2012). We independently consider whether the material facts are undisputed and whether the court properly applied the law to those facts. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010). We similarly review de novo issues of contract interpretation. *Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 634, ¶ 5 (App. 2000).

¶14 An attorney charging lien is an equitable lien that may attach to funds or property "created or obtained by the attorney's efforts," providing security for payment of the attorney's fees. *Nat'l Sales & Serv. Co., Inc. v. Superior Court*, 136 Ariz. 544, 545 (1983). The right to the fees is contractual, governed by the terms of the fee agreement between attorney and client; the charging lien provides security for that contractual right should the attorney successfully secure an award for the client. *Langerman Law Offices, P.A. v. Glen Eagles at Princess Resort, LLC*, 220 Ariz. 252, 254, ¶¶ 6, 9 (App. 2009).

¶15 A charging lien is not, however, inevitable: Its existence depends on the attorney and client's intent to create such a lien, which further requires "that the parties looked to the fund itself for the payment of the attorney." *Linder v. Lewis, Roca, Scoville & Beauchamp*, 85 Ariz. 118, 123 (1958); *Nat'l Sales & Serv. Co.*, 136 Ariz. at 545.

¶16        Here, Calhoun Law's assertion of a charging lien fails because no evidence showed that Calhoun Law and Fast Track "looked to the [Disputed Funds] for payment." Calhoun Law's contract with Fast Track was for fees billed by the hour and invoiced monthly, with payment due on receipt of the monthly statement. Failure to promptly pay the monthly bill was grounds for Calhoun Law to withdraw from representation. Not only does this fees provision fail to specify settlement funds or other recovery as the source of payment, but the immediate payment requirement is entirely inconsistent with an intent for payment to await funds received, if at all, only at the end of the case.

¶17        The only arguable basis for Calhoun Law's contrary position is a sentence not in the fees provision, but in the provision on terminating representation. That clause states that although either side may terminate representation at any time, Fast Track remains obligated to pay for any advanced costs and Calhoun Law's fees "from any recovery." While Calhoun Law and Fast Track could have (but did not) reach an express agreement granting Calhoun Law a lien against the recovery, *see Skarecky & Horenstein, P.A. v. 3605 N. 36th St. Co.*, 170 Ariz. 424, 427 (App. 1991), simply referring to "recovery" is insufficient to support an inference that Fast Track and Calhoun Law intended to grant a lien against the recovery. The clause does not limit Calhoun Law's right to payment to a single source so as to justify an equitable lien against that source to secure payment or to support the requisite inference that the parties understood and intended to create such a lien against that source of funds. *Cf. Linder*, 85 Ariz. at 123; *Barnes v. Shattuck*, 13 Ariz. 338, 343 (1911). Instead, the agreement still left Fast Track—as stated in the contract term expressly governing fees—obligated to pay its monthly bill from any available source of funds and regardless of any recovery. In the context of this agreement, more is required to show an intent to create a charging lien.

¶18        Although we need not determine whether an hourly fee agreement could ever support an (implied) equitable attorney charging lien, we note that the Arizona cases recognizing charging liens are contingency fee cases. *See, e.g., Linder*, 85 Ariz. at 123 (one-third contingency fee); *Barnes*, 13 Ariz. at 341, 343 (one-fourth contingency fee); *Holly v. State*, 199 Ariz. 358, 360, ¶ 12 (App. 2001) (one-third contingency fee); *State ex rel. Raber v. Wang*, 230 Ariz. 476, 477–78, ¶¶ 2, 9–12 (App. 2012) (contingency fee for an unspecified amount); *cf. State Farm Mut. Ins. Co. v. St. Joseph's Hosp.*, 107 Ariz. 498, 502 (1971). This makes sense insofar as an agreement to pay a percentage of any judgment or settlement inherently "look[s] to the [judgment or settlement] for payment" whereas an hourly arrangement need not. *See, e.g., Linder*, 85 Ariz. at 123 (inferring an intent to create a

charging lien based on a contingency fee "to be paid from 'any monies recovered'"); *Barnes*, 13 Ariz. at 341, 343 (describing as "apparent" the intent of parties to a contingency fee to create a lien on money and property received as a result of the litigation); *see also Holly*, 199 Ariz. at 360, ¶ 12 (recognizing a charging lien (and its priority over a statutory setoff) arising from a contingency fee); *State ex rel. Raber*, 230 Ariz. at 477–78, ¶¶ 2, 9–12 (relying on priority of charging lien for contingency fees to undermine argument for apportionment under common fund doctrine); *cf. Nat'l Sales & Serv. Co.*, 136 Ariz. at 545 (discerning no evidence of an intent to create a charging lien based on an hourly fee agreement). Similarly, a contingency fee arrangement looks *only* to the judgment or settlement for payment, making clear to both attorney and client the sole source of funds for payment and the attorney's entitlement to payment from that fund. And it reaches only a *portion* of any judgment or settlement that results, meaning equity can imply a charging lien for the attorney with assurance that the client will retain a portion of the recovery. An hourly agreement offers no such assurances—as this case makes clear, given that Calhoun Law's proposed charging lien would swallow the Disputed Funds twice over.

¶19 Accordingly, we affirm the superior court's determination that Calhoun Law did not have a charging lien against the Disputed Funds. And because a charging lien was Calhoun Law's only asserted basis for challenging MidFirst's right to the Disputed Funds, we need not address the remainder of the summary judgment ruling, and we thus affirm.

## II. Attorney's Fees Under § 12-341.01.

¶20 Calhoun Law next challenges the superior court's award of attorney's fees in favor of MidFirst under A.R.S. § 12-341.01(A). Calhoun Law argues the superior court erred by characterizing the case as one arising out of contract, specifically contending that the case was not, as the superior court stated, "a contest between competing security interests in the same collateral." We consider the application of § 12-341.01 to the claims at issue de novo as a matter of statutory interpretation. *US Bank, N.A. v. JPMorgan Chase Bank, N.A.*, 242 Ariz. 502, 507, ¶ 22 (App. 2017).

¶21 Section 12-341.01 allows a discretionary award of attorney's fees to the successful party in an action "arising out of a contract." A claim arises out of contract if, considering "the nature of the action and the surrounding circumstances," the claim could not exist but for the contract. *Marcus v. Fox*, 150 Ariz. 333, 335 (1986); *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 15–16, ¶ 27 (App. 2000). Similarly, this court has recognized that "a contest between competing security interests in the same

collateral" may support a fee award under § 12-341.01 because the competing claims stem from "the rights, obligations, validity, enforceability and priority of rights arising out of contract"—that is, the contest could not exist but for the parties' underlying contracts giving rise to those security interests. *Wollenberg v. Phx. Leasing Inc.*, 182 Ariz. 4, 11 (App. 1994); *Ariz. Farmers Prod. Credit Ass'n v. Northside Hay Mill & Trading Co.*, 153 Ariz. 333, 336 (App. 1987); *Ariz. Ammonia of Tucson, Inc. v. Mission Bank*, 152 Ariz. 361, 364 (App. 1986).

¶22        Here, the superior court reasoned that § 12-341.01 applied because the dispute between MidFirst and Calhoun Law was a fight over which entity held the priority security interest in the Disputed Funds. Calhoun Law's focus on the court's use of the term "collateral" misses the point. MidFirst's claim to a priority interest in the Disputed Funds is based on and could not exist but for the rights and obligations set forth in its promissory note and security agreement with Fast Track. Calhoun Law's claim to a priority interest in the Disputed Funds is based on a charging lien, which although in itself an equitable claim, *see Millsap v. Sparks*, 21 Ariz. 317, 320 (1920), is based on and could not exist but for the contractual fee agreement purportedly giving rise to the lien. *See Langerman*, 220 Ariz. at 254, ¶ 6. Because MidFirst's and Calhoun Law's competing claims both arise out of contract, the superior court did not err by awarding fees under § 12-341.01.

## III.    Attorney's Fees and Costs on Appeal.

¶23        MidFirst seeks an award of attorney's fees on appeal under § 12-341.01. In an exercise of our discretion, we deny its request. As the prevailing party, however, MidFirst is entitled to its costs on appeal upon compliance with ARCAP 21. *See* A.R.S. § 12-342.

## CONCLUSION

¶24        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8